## SAAR v. FINKIN.

79 61
96 408

79 61
111 545

79 61
113 277

**Evidence:** CONFLICT: WHAT CONSTITUTES: PROVINCE OF JURY. It is not essential to a conflict of evidence that the testimony shall come from opposing sides; but if the statements and facts in evidence are such that they lead the mind to opposite conclusions as to a particular fact in issue, then there is a conflict of evidence, and its reconciliation, in a law action, is the peculiar province of the jury, or of the trial court, where the trial is to the court without a jury, and this court will not interfere. Accordingly, where a transfer of personal property from father to son had the effect to defeat the father's creditors, who challenged the validity of the transfer, and the testimony of the members of the family was all designed to sustain it, but in fact showed a very loose transaction, which might be consistent with an honest intention, but such as is often engaged in between members of a family to defeat creditors, *held* that there was a conflict of evidence, though the testimony was not contradicted.

*Appeal from Mills District Court.*—Hon. H. E. Deemer, Judge.

Filed, January 23, 1890.

The issues in this case involve the ownership of certain personal property levied upon at the instance of plaintiff, as the creditor of John Finkin. Intervenor avers that he owns the property, and asks its release from the levy. Judgment for plaintiff, and intervenor appeals.

*Stone & Gillilland,* for appellant.

*Flickinger Bros.,* for appellee.

Granger, J.—This case was before this court on a former appeal, and the opinion is to be found in 71 Iowa, at page 425. At that hearing the judgment was reversed because of an erroneous instruction. At the next trial the cause was submitted to the court, without a jury, on the written testimony and records of the former trial, by stipulation. The only error assigned is that the judgment of the court is not sustained by the evidence.

The rule that, in a law action, where there is a conflict of evidence on which the finding of the court or the verdict of the jury rests, we cannot interfere, is well settled, and we do not understand it to be questioned in this case; but it is argued that there is no conflict. The precise question is as to the fraudulent transfer of the property from John Finkin to the intervenor, his son. The facts of the case are stated in the opinion on the former hearing, and it is unnecessary to restate them here. The former opinion, in considering the validity of an instruction in the first division, deals to some extent with the testimony and the facts, and, although used for another purpose, shows quite clearly that the testimony is conflicting. Many other facts and circumstances might be added, among which are these: That the sale was made in a loose and unbusinesslike manner. The son was to take the property of

Saar v. Finkin.

the father, and pay his debts, and cancel his claim for services rendered. These services were rendered under an agreement, as stated by the father, to this effect: In 1878, when the son became of age, and after the father and mother had talked over the matter as to Thomas, the father says: "We called him in, and asked him if he would work any longer for us, or on what terms. He says: 'Well, I will work for you.' 'Well, on what terms? What pay will you have?' 'Well, just what you are content to give me,—what you want to do for me.' We made no further agreement than that I told him: 'If you work for us until you go to keeping house, I will make it right with you. I will pay you what is right.' That is the agreement we made. Under this agreement he worked for me—tended the farm, until the fall of 1884." At the time of this agreement, as stated by the father, the amount of the indebtedness to be paid by the son was not definitely known. It was some five or six hundred dollars, but did not include the debt of the plaintiff, which it appears grew out of signing a note as surety. That the contracts for services to be rendered, and of settlement, were such as would not be made by persons of ordinary prudence, not thus related, must be conceded. It was a transaction so indefinite and loose in its terms as to be well adapted to any emergency or purpose the parties might wish to use it for. It was quite readily adjustable to an honest or a dishonest purpose. We believe that many such family transactions take place entirely free from fraudulent taint. Again, we know that many are conceived and nurtured in fraud. Hence, where the effect is to leave the creditors unpaid, the transaction is viewed with suspicion. It is true there are no witnesses to contradict the intervenor and his witnesses as to the transaction, for it transpired entirely in the family; and there is much evidence, not recited in this opinion, very favorable to the intervenor, and on which a finding might have been based for him. But that does not show that there is no conflict of evidence. It is not essential to a conflict of evidence that the testimony

shall come from opposing sides; but if the statements and facts in evidence are such that they tend to lead the mind of the court to opposite conclusions as to a particular fact or issue, then there is a conflict of evidence, and its reconciliation, in a law action, is the peculiar province of the *nisi prius* court. We believe, without doubt, there is a conflict of evidence in this case, and that it is of a character that we cannot hold that the finding of the court below was a result of passion or prejudice. Under such circumstances, we cannot reverse the judgment, and it is      AFFIRMED.