In re Estate of S. E. Pennock, Deceased.

Ruth Pennock, Appellant, v. O. C. Pennock, Administrator, Appellee.

Estates of Decedents: PAYMENT OF CLAIMS. An administrator will
1    not be disallowed for the payment of valid claims simply because they were not filed against the estate.

Claims: EFFECT OF DISAPPROVAL. The allowance of a claim
2    against an estate by a special in favor of the general administrator, which is approved by the court, cannot be attacked by exceptions to the final report.

Sale of Real Estate: WIDOW'S DISTRIBUTIVE SHARE: ESTOPPEL.
3    Where the widow is made a party to an application to sell the entire real estate for the purpose of paying the debts of an estate and makes no appearance but consents to the sale, she is estopped both by the decree and her conduct from claiming a distributive share in the land or the proceeds.

Rights of Widow: RENTS AND PROFITS. An administrator is not
4    liable to an intestate's widow for rents from the estate until her distributive share has been set off.

*Appeal from Cedar District Court.*—Hon. W. N. Treichler, Judge.

Saturday, February 6, 1904.

This is a contest over the final report of O. C. Pennock, as administrator of .the estate of his son, S. E. Pennock, deceased. Ruth Pennock, widow of S. E. Pennock, filed objections thereto, which were overruled, and the final report was approved. The objector appeals.—*Affirmed.*

*George C. Hoover* and *Baker & Ball* for appellant.

*T. B. Hanley* and *Wright & Wright* for appellees.

Deemer, C. J.—S. E. Pennock, a son of O. C. Pennock, died intestate in February of the year 1889, seised of one

hundred sixty acres of land.   At the request of his widow, Ruth, his father, O. C. Pennock, was appointed administrator of the estate.   As such he duly qualified, and proceeded to administer the same, and on April 2, 1901, filed a final report, showing that he had paid out something like $450 more than he had received, and that there was nothing left to pay his statutory fees for services rendered.   These matters he waived, and asked for a final discharge and the release of his bondsmen.   Ruth Pennock appeared, and on August 8, 1901, filed objections to the report, which, so far as argued, we shall now proceed to consider.   The administrator asked credit for the sum of $803.63 paid out on what are known in the record as the Lumpy and Fairall and McClellan notes.   It seems that these notes were signed by S. E. Pennock and O. C. Pennock, their names being affixed in the order named, and were marked, "Paid in full by O. C. Pennock, administrator."   The sole objection to these items is that they were not filed as claims against the estate, and therefore that the administrator paid them wrongfully. It is not denied that they were valid claims against S. E. Pennock, but it is said in argument that on the face of the claims the administrator was jointly liable with the deceased, and that he is not entitled to credit for the amount paid, for the reason that the claims were not filed as by law provided. The thought that the administrator was jointly liable with his son on these notes is not raised in the objections filed, and the only question for our consideration here is, is the administrator entitled to credit for sums paid on valid claims which were not in fact filed?   On appellant's own theory the estate was jointly liable on these notes; in other words, they were valid claims against the estate.   But the argument is that the administrator is not entitled to credit for the same for the reason that they were not properly filed.   This is not in itself sufficient grounds for disallowing the credit.   *In re Wonn,* 80 Iowa, 750; *Ames v. Jackson,* 115 Mass. 508.

I. PAYMENT of claims.

II.   At the time the deceased purchased the land of which he died seised his father borrowed the sum of $3,000,

and gave a mortgage to secure the same upon his own land.

2. CLAIMS: effect of approval. The amount so borrowed was turned over to the son, who used it in part payment of the land purchased by him, with an agreement that he (the son) would pay the father six and one-half per cent. interest thereon. After the death of the son the father filed a claim against the estate for the sum of $3,000, with interest. As the father was also administrator, a special administrator was appointed, to whom the matter was referred, who reported in favor of the allowance of the claim, with interest, and the administrator asks credit for the amount so found due. The son's widow objects to this on the ground that the amount furnished the son was a gift or advancement to him, and that the allowance by the special administrator is not binding upon her. The proceedings with reference to the allowance of this claim were all regular, and the court approved the allowance in April of the year 1900. Ruth Pennock did not object thereto until August 8, 1901. The allowance of this claim, while not a judgment, is attended with the same presumption as a judgment, and should be attacked in the same manner as if it were. It cannot be reached by exceptions to the final report. *Ashton v. Miles,* 49 Iowa, 568. Moreover, there is not the slightest evidence of any fraud in the proceedings, and under the evidence as we have it in the record the allowance was entirely proper. There is no merit in this objection.

III. The real estate belonging to the deceased was sold on order of court to pay the debts of the estate. The entire one hundred sixty acres was sold with the consent of Ruth Pennock, the widow, for the sum of $10,800. The adminis-

3. SALE of real estate: widows distributive share: estoppel. trator charged himself with the full purchase price of the farm, but with this there was a shortage of assets after paying the valid claims against the estate. Ruth Pennock, the widow, claims that she is entitled to one-third of this purchase price, free and clear of all debts of the decedent except mortgages for the purchase price of the land given by her husband, amounting

to $7,070. As her share cannot be affected by debts of her husband, she might be entitled thereto but for the fact that she was made a party to the proceedings for the sale of the real estate, knew that the administrator was seeking to sell the entire land, made no appearance to the application, and finally consented to the sale at the price which was actually paid. That good title passed to the purchaser under these circumstances is clear. *Olmsted v. Blair,* 45 Iowa, 42; *Garvin v. Hatcher,* 39 Iowa, .685. This is practically conceded by the widow and her counsel, but they claim that notwithstanding she is entitled to one-third of the proceeds of the sale after deducting the purchase money debts. There are, as it seems to us, two answers to this contention. In the first place, it is held in the *Olmstead Case, supra,* that a judgment for the sale of real estate, such as was entered in this case, bars the widow of her claim to a distributive share, and forever estops her to set it up in any proceeding; second, it is shown by the evidence that the widow expressly consented to the sale for the purpose of paying the debts of her deceased husband. This was her declared purpose until she filed her objections in this case, and she is now estopped from changing her ground. By failing to appear to the application to sell the real estate, she lost her right to a distributive share, and, having lost that right, she has no claim to the money, for the money could not be impressed with a trust, or treated as if it were the land itself. When the decree for the sale was passed, it deprived her of all interest in the land or in the proceeds thereof. But she contends that, as the administrator was allowed on his personal claim the sum of $3,000, he still has enough in his hands to pay her the amount she claims to be entitled to in lieu of her distributive share, and that there is no room for application of the dictrine of estoppel *in pais.* We have found that she is estopped by judicial decree. This, of course, is conclusive. But we also think that there was an estoppel *in pais* as to the proceeds. If the administrator had not been expressly authorized to

use the proceeds from the sale of the land to pay the debts of the deceased, he might have concluded to probate the claims, or to have held back enough to pay his own claim and leave some others unpaid. In other words, we think he has so acted as to justify a release on the doctrine of estoppel.

IV. The last item relates to a claim made by the widow that she is entitled to one-third of the rents and profits of the land owned by her husband from the time of his death down

4. RIGHTS of
widow: rents
and profits.

to the time the land was sold, less the amount paid out by the administrator for taxes and repairs; in other words, she claims from this source the one-third of $1,078.26. There is no doubt that the assets of the estate were insufficient to pay the valid claims against it. The administrator took possession of the land with the assent of the widow, and proceeded to collect the rents therefrom down to the time the land was sold. These rents were applied, as collected, in payment of the mortgage debts and other valid obligations of S. E. Pennock, with the consent of the widow. She now claims that she is entitled to one-third of the amount collected, for the reason that the probate court made no order authorizing the administrator to collect the rents and apply the same on the debts of the deceased, as provided in section 3334 of the Code. There is no doubt that the administrator may, by direction of the court, take charge of any real estate belonging to the deceased, and apply the profits to the payment of claims against the estate of the deceased, whenever the personal assets of the estate are insufficient. *Toerring v. Lamp,* 77 Iowa, 488. Without such order or direction of the court, the administrator has nothing to do with the real estate, save where there is no heir present and competent to take possession of the real estate; and in such case his possession is that of a trustee only. Code, section 3333, and cases cited thereunder. "Rents and profits, like the real estate itself, may be subjected to the payment of debts when the personal are insufficient in the manner provided; but not otherwise." *Dexter v. Hayes,* 88 Iowa, 493. Thus far there is little difficulty in the case. But this is

virtually an action brought by the widow herself against the administrator as such to recover one-third of the rents and profits received by him from the land of her deceased husband.   That she is not entitled to recover then in such a proceeding is squarely held in *Laverty v. Woodward*, 16 Iowa, 1.   As administrator he is not responsible to the heirs for rents collected, and in no event is he liable to a widow for rents until her distributive share is set aside.   See, also, *Felch v. Finch*, 52 Iowa, 563; *Huston v. Seeley*, 27 Iowa, 183; *Roan v. Holmes*, 32 Fla. 295 (13 South. Rep. 339, 21 L. R. A. 180), and cases cited.   If it be held that Ruth Pennock might recover rents from the administrator personally in this form of action, because he wrongfully took possession of the real estate, and collected the rents thereof, the doctrine of estoppel would apply, and her consent to his conduct might bar her of relief.   But we need not speculate on this.   She does treat him as an administrator holding the property as such, and shows no right to its recovery.

There is no merit in any of the exceptions taken by the widow, and the order approving the final report and discharging the administrator is AFFIRMED.