IN RE ESTATE OF JAMES DALTON, Deceased.

**EXECUTORS AND ADMINISTRATORS:** Paying Taxes from Personalty. An administratrix may not legally apply the personal property of an estate to the payment of taxes on the real estate left by deceased, when she was not, as administratrix, in possession of such real estate, and when said taxes were not even payable when the intestate died. But where such taxes were paid from rents accruing subsequent to the intestate's death, the error may be corrected by charging the administratrix with one third and the shares of the heirs with two thirds of the payment.

**EXECUTORS AND ADMINISTRATORS:** Paying Interest on Mortgage Indebtedness. An administratrix may validly pay, from the personal funds of the estate, duly filed claims for interest due on the intestate's real estate mortgages.

**EXECUTORS AND ADMINISTRATORS:** Repairs on Homestead. Repairs or betterments on the homestead during the "occupancy" period may not be made at the expense of the estate.

**EXECUTORS AND ADMINISTRATORS:** Rents—When Treated as Realty. Rent notes falling due *after* the death of the owner of the real estate will be treated as real estate, with consequent right on the part of the surviving widow, who was administratrix, to refuse to account, *as administratrix*, for one third of such rents.

**EXECUTORS AND ADMINISTRATORS:** Attorney Fees—Necessity and Reasonableness. An administrator must defend his employment of an attorney on behalf of the estate, and the amount paid the attorney, by *affirmative* evidence showing the *necessity* for

the services and the *reasonableness* of the amount paid. Evidence of the amount that the administrator *agreed* to pay is wholly immaterial. Even a judgment against the administrator for the amount of the fee will be ignored, in the absence of a showing that it was rendered on an issue as to its *reasonableness*.

**EXECUTORS AND ADMINISTRATORS:** Administrator Employing Attorney to Defeat Will. An administrator has no authority, *as such*, to employ an attorney to contest the probate of a will and to charge the estate with the resulting fees.

*Appeal from Plymouth District Court.*—WILLIAM D. BOIES, Judge.

JUNE 24, 1918.

APPEAL by the heirs from an order overruling certain objections to a final report of Margaret Dalton, as administratrix of the estate of James Dalton, deceased.—*Reversed and remanded.*

*Molyneux & Maher,* for appellant.

*Shull, Gill, Sammis & Stilwill,* for appellee.

LADD, J.—James Dalton died intestate, October 27, 1914, leaving him surviving a widow and nine children. At the time of his death, he was seized of 384 acres of land in Cherokee County, a house and lot where he lived in Le Mars, household furniture, $585.66 on deposit in a bank, $150 in cash, and notes given for rent. The widow's share of his life insurance was $583, and she was allowed $600 for support. She was appointed administratrix of the estate; and shortly thereafter, suit for the establishment of a lost will was brought by some of the heirs, making her a party defendant, both individually and as administratrix, but was subsequently dismissed without trial. Her final report was filed April 26, 1916; whereupon, the children of decedent, other than Helen, interposed objections, several of which

were sustained, and others overruled. With the latter only are we concerned.

I. The administratrix appears to have paid the taxes on the land, as well as the house and lot, levied in 1914 and 1915. These were not liens, and had not become payable at the time of decedent's death. They did not then constitute personal obligations of the decedent, and might not be paid by the administratrix out of the proceeds of the personal property of the estate, even on the reasoning of *Findley v. Taylor*, 97 Iowa 420; but see *Plymouth County v. Moore*, 114 Iowa 700; *Crawford County v. Laub*, 110 Iowa 355. There is no showing that administratrix took possession of the land; and, therefore, she was not concerned, as such administratrix, therewith, or with the taxes not payable thereon. Exceptions to the payment from the proceeds of the personalty should have been sustained. They were paid from rents to accrue after Dalton's death; and, as this worked no prejudice to the heirs, save in charging same against the heirs' two-thirds interest in the rents, this will be corrected by charging one third of these taxes against the administratrix and two thirds thereof only against the shares of the heirs.

1. EXECUTORS AND ADMINIS-TRATORS: paying taxes from personalty.

II. There was a mortgage on the land, and, as we understand it, one on the house and lot. The administratrix paid interest on each of these. Exception was taken to this, for that, as is said, the interest should be taken from the future rents of the estate. But the widow's distributive share was not subject to the payment of the husband's debts, even though secured by these mortgages, until the shares of the heirs therein had been exhausted. *Mock v. Watson*, 41 Iowa 241; *Kendall v. Kendall*, 42 Iowa 464. That the mortgages might be enforced against the realty did not impair the obligations as those of decedent;

2. EXECUTORS AND ADMINIS-TRATORS: paying interest on mortgage indebtedness.

and claims for the indebtedness secured might have been filed against the administratrix, and payment enforced from the personal estate. *Sharpless v. Gregg,* 45 Iowa 649; *Boyd v. Collins,* 70 Iowa 296; *James v. Weisman,* 161 Iowa 488. That the widow's distributive share may not be subjected to the payment of a particular indebtedness does not relieve the personalty from being charged with its satisfaction. Real estate may not be resorted to for the payment of debts until personal property is exhausted or shown to be inadequate for that purpose, and the widow may share in the personal property only after the debts of the estate have been satisfied therefrom. This appears from Section 3362 of the Code:

"The personal property of the deceased not necessary for the payment of debts of decedent therefrom; and of this distributed to the same persons and in the same proportions as though it were real estate."

The personal estate is distributed only after provision for the payment of debts of decedent therefrom; and of this remainder, one third goes to the widow and two thirds to the heirs. As observed in *Herriott v. Potter,* 115 Iowa 648:

"While the right to the distributive share of personal property vests in the heirs at the time of the decedent's death, title to specific property and the amount to be received is not determined until distribution through the probate court is effected. This merely ascertains and segregates the particular portion to which each heir is entitled, and his title immediately attaches, and relates back to that of decedent, of whom he takes. Sections 3362, 3364, Code; *Moore v. Gordon,* 24 Iowa 158; *Weaver's Estate v. State,* 110 Iowa 328. See *Foss v. Cobler,* 105 Iowa 728. But at decedent's death, it passes to the possession and control of the executor or administrator, subject to his disposal; and only after the payment of the debts and costs of administration is it to be distributed. On the other hand, the title to real estate descends to the heirs *eo instanti* upon the

death of the ancestor, with the quantity of each definitely ascertained. From that instant, subject to the right of the administrator to resort thereto for the payment of the debts of the deceased, they may dispose of the particular property as the owners, by sale, devise, or gift, and are entitled to possession and the rents and profits."

See *Ritchie v. Barnes,* 114 Iowa 67; *Christe v. Chicago, R. I. & P. R. Co.,* 104 Iowa 707.

We are of opinion that the mortgage indebtedness might have been established as a claim against the estate. Whether claim therefor or for the interest accruing was filed, does not appear; but, inasmuch as the matter of filing or proving of such a claim is not mentioned in argument, we may well assume that it was duly filed and established. No error in overruling this exception appears.

III. The administratrix credited herself with $20.45 paid Thomas Rinehart in December, 1914. She testified that this "was for repairs on the pump in the basement and on the furnace. Some of it was done before Mr. Dalton's death and some of it after, but it was all done on the homestead. Some of the bill was for connecting the sewer."

3. EXECUTORS AND ADMINISTRATORS: repairs on homestead.

The bills or vouchers disclose that but $1.35 of the amount was for services or material furnished decedent, and that amount should have been allowed. The other items were dated long after his death, and while she was occupying the premises without rental charge. She had the right to the occupancy of the homestead until otherwise disposed of (Section 2985, Code); but this did not authorize her to keep it in repair at the expense of the estate, nor did it impose upon her, as administratrix, any duty to do anything in the way of keeping the same in repair; since her possession was that of widow, and she did not pretend to have taken possession as administratrix. As such, she had no concern with

the realty, and the court erred in the allowance of more than $1.35 on this claim.

IV. The decedent had leased the farm, taking notes for rents payable for its use. Of the rent for 1914, one note for $201.50 became due November 1, 1914, and $1,200, February 1, 1915; and the rental for 1915 was evidenced by one note for $910.90, due November 1, 1915, and another for $1,200, due February 1, 1916. These notes were inventoried as personal property. The administratrix, however, retained one third thereof, on the theory that the moneys received were for rent to accrue, and should be treated as realty. The general rule is that rents accruing after the owner's death belong to the heirs or devisees, as an incident to the ownership of the land which descends to them. *Swift v. Flynn,* 145 Iowa 630; *In re Pennock's Estate,* 122 Iowa 622; *Dexter v. Hayes,* 88 Iowa 493; *Crane v. Guthrie,* 47 Iowa 542; *Laverty v. Woodward,* 16 Iowa 1. In the absence of a stipulation to the contrary, rent does not accrue until the tenant has enjoyed the use of the land during the period for which it is payable: that is, at the expiration of the term, unless shorter periods are designated in specifying the rent reserved. *Dixon v. Niccolls,* 39 Ill. 372 (89 Am. Dec. 312); *Castleman v. De Val,* 89 Md. 657 (43 Atl. 821); *Wood v. Partridge,* 11 Mass. 487; *Kistler v. Mc Bride,* 65 N. J. L. 553 (48 Atl. 558). By agreement it may come due at an earlier date; and in this cause, the first rent note was payable November 1st following Dalton's death. When the crops may have matured was of no significance; for the rent was payable in money at a time in no manner dependent on the maturity or marketing thereof. Had the rental been a share of the crop, payable at maturity, then, of course, the rent would accrue at that time. Rents to accrue are chattels real, and, as said, pass upon the death of the owner to those who succeed to such ownership, i. e., the

4. EXECUTORS AND ADMINISTRATORS: rents: when treated as realty.

widow and heirs of said owner. 1 Woerner's American Law of Administration, Section 300; 24 Cyc. 1170, and cases collected in note.

No point is made as to whether the administratrix, as widow, had previously elected to take her distributive share in lieu of homestead; and we decide only that the rent had not accrued at the time of decedent's death, and that the right thereto passed as an incident to the realty, and not to the administratrix. The court, then, cannot be said to have erred in allowing the administratrix, as widow, to retain one third of the rents to accrue. The other two thirds were properly subjected to the payment of the debts of decedent, to satisfy which the personal property was inadequate. *Dexter v. Hayes,* 88 Iowa 493.

V. The administratrix credited herself with the payment of $350 to P. Farrell and $50 to Nelson Miller for services rendered in the settlement of the estate, and $300 paid Farrell and $100 paid Miller for services rendered in defending against the establishment of the alleged lost will. Itemized accounts of such services did not accompany the report, nor was there any evidence introduced tending to show for what the services were rendered, or the reasonable value thereof. Only the reasonable value of the services rendered by attorney in the settlement of estates will be allowed, regardless of what was paid or agreed to be paid. *In re Estate of Carmody,* 163 Iowa 463; *In re Estate of Smith,* 165 Iowa 614. And upon objection's being made to the employment or the amount paid for such services, the burden of proof was upon the administrator to show the necessity of such employment and reasonable value of services, precisely as where objection is interposed to other disbursements. *Munden v. Bailey,* 70 Ala. 63; *Taylor v. Burk,* 91 Ind. 252; *Miller v. Simpson,* (Ky.) 2 S. W. 171; *In re Archer's Estate,* 23 N. Y. Supp. 1041; 2 Woerner's

5. EXECUTORS AND ADMINISTRATORS: attorney fees: necessity and reasonableness.

American Law of Administration, Section 529; 11 Am. & Eng. Encyc. of Law (2d Ed.), 1241; 18 Cyc. 1180. Of course, the exceptions may be of such affirmative character as that the objector assumes the burden of establishing them. *Estate of Vance,* 141 Cal. 624 (75 Pac. 323) ; *Succession of Conery,* 106 La. 50 (30 So. 294).

After Farrell was paid $125, he brought suit against the administratrix, and recovered judgment for the balance of $525. All this adjudicated was that she owed him that amount; but whether this was the reasonable value of his services or on their agreement does not appear, and, therefore, the judgment was not prima-facie evidence of the value of the services rendered, as between the objecting heirs and administratrix. The only other evidence was that little more than $4,000 passed through her hands without suit. Of course, the amount involved is important in ascertaining the reasonableness of a charge, but this furnishes little aid when the court was not advised of what had been done. What Miller did does not appear, save that he acted as the attorney of the administratrix during Farrell's illness. The necessity of evidence to establish an expense in such a case is the same as in any other, and the same rules obtain with reference to its introduction. And, as the expenses of administration were to be paid from the heirs' two-thirds interest, the court should scrutinize the account closely. The evidence was insufficient to show that the expenses for attorneys' fees were reasonable; and on this ground, the order allowing them is reversed.

VI. As seen, the administratrix was allowed $400 for attorneys' fees paid Farrell and Miller in defending against the establishment of the alleged lost will. Aside from the

6. EXECUTORS AND ADMINIS-TRATORS : administrator employing attorney to defeat will.

objections heretofore mentioned, it is to be said that the administratrix, as such, had no interest in the estate such as would justify her in attempting to defeat the admission of the will to probate. It cannot be said to

have been of concern to the estate whether she, as administratrix, or an executor, to be appointed, administered on its assets; and whether the admission of a will to probate will be for the benefit of or detriment to the estate may well be left to those interested therein, rather than to one interested in its administration only. As said in *Edwards v. Ela,* 5 Allen (Mass.) 87:

"The administrator, as to much that occurred in the progress of the settlement of the estate, might properly be considered as the representative of the heirs and creditors, and, while acting in good faith in prosecuting or defending claims for their benefit, should be fully indemnified for all reasonable expenditures occasioned thereby. But he was not called upon, in the discharge of his official duty as administrator, to employ counsel to oppose the probate of a will of the deceased. That question goes out of his sphere of action, and may affect interest that he does not represent; and money expended by him in opposing the probate of the will is or may be expended adversely to the interest of those who are to enjoy the estate as devisees. Such opposition may be safely left to the heirs at law personally to protect their interest, if endangered by setting up an instrument purporting to be a will. With the liberal rule generally adopted by this court, as to the refusal to award costs against the party opposing the probate of a will disinheriting the heirs at law, we see no reason in this case for going further, and charging upon the estate of the testator the expenses incurred in opposing the probate of the will; and more especially so in a case like the present, where the administrator was personally deeply interested, as her late husband, and entitled, under the statute of distribution of intestate estates, to her personal estate, if no will was established."

In *Dalrymple v. Gamble,* 68 Md. 156, the administrator employed counsel to resist the admission of a will to probate in California; and, in the course of the opinion reject-

ing the expense, the court, after saying the duty of defending did not rest on the administrator, proceeded:

"If a person not named as executor had taken out letters *pendente lite,* would it have become his duty, as such administrator *pendente lite,* to interfere and resist the probate of the will. If, in that case, or in the case under review, it was his duty, then neglect to discharge that duty would have rendered him answerable on his bond as administrator. Duty and liability in such case are correlative. Would a suit on the appellant's bond have been maintainable against him, had he neglected to do what he did in respect to contesting the will? We think it very clear it could not have been; for there is no language in the bond specifying such duty, and we find nothing in the statute binding him to any such course; nor do we know of any obtaining practice from which it could be inferred as his duty. The action taken was purely *personal* in its nature, and not *fiduciary* in character. It was personal in *name,* and was conducted with others jointly interested, who had agreed to share proportionally the expenses of the proceedings. If successful, *it could only bring benefit to the plaintiffs therein;* and it brought nothing, and secured nothing to the estate, as such. The Orphans' Court could not, on anybody's petition, have ordered the administrator to take such proceedings, because the interest of the estate, as such, was not involved. If the court could not order it to be done, how could he voluntarily engage in it at the charge of the estate?"

See, also, *Lester v. Mathews,* 56 Ga. 655.

Expenses incurred in the defense of the suit to establish the lost will should not have been allowed the administratrix. Some claim is made that the widow was allowed one third of the personal property before the payment of the indebtedness of decedent therefrom. If so, this should be corrected. Possibly the division of the rents only is meant. For the correction of the final report on such further hear-

ing as may be deemed appropriate, the order is challenged, and, in so far as held erroneous, is reversed, and the cause remanded.—*Reversed and remanded.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.