FIRST NATIONAL BANK OF BURT, Appellee, v. MATT J. MURTHA, Executor, Appellant, et al., Defendants.

No. 40415.

MAY 5, 1931.

Sullivan, McMahon & Linnan, for appellee.

Shumway & Kelly, for appellant.

KINDIG, J.—The First National Bank, of Burt, plaintiff and appellee, sought the appointment of a receiver in the district court to collect the rents and profits from certain land during the period of redemption after mortgage foreclosure. Resistance to such appointment was made by Matt J. Murtha, defendant and appellant. A receiver, however, was appointed, by the district court, who took possession of the real estate in question and collected the rents and profits therefrom during the time fixed by the district court. Because thereof, the appellant asks that the judgment and decree below be reversed. By reciting the historical facts, the points in issue will be understood more readily.

On December 18, 1924, Mary Murtha and P. J. Murtha, husband and wife, executed a promissory note in the sum of $3,000, payable to E. J. Murtagh; whereupon the said Murtagh endorsed and transferred the note without recourse to the appellee. When executing this note, Mary Murtha and P. J. Murtha gave a mortgage upon certain real estate in Kossuth County to secure the same. This mortgage was duly assigned to the appellee.

P. J. Murtha, aforesaid, died testate on July 8, 1928. At the time of his death, he owned the above named mortgaged

premises and through his will devised a life estate therein to his widow, the said Mary Murtha. The appellant, Matt J. Murtha, is a son of the decedent and Mary Murtha. He was named executor in the will, and letters testamentary were duly issued to him. Thereafter, on July 28, 1928, the widow attempted to lease the real estate to one Peter Muller for the year commencing March 1, 1929.

P. J. Murtha's estate is insolvent, but the executor at no time took charge of the land, as provided by Sections 11952 and 11953 of the 1927 Code. Those sections read as follows:

"11952. If there is no heir or devisee present and competent to take possession of the real estate left by the decedent, the executor or administrator may do so, and demand and receive the rents and profits, and do all other acts relating thereto which may be for the benefit of the persons entitled to the same."

"11953. Such executor or administrator, under the direction of the court, may apply the profits thereof to the payment of taxes and claims against the estate of the deceased, if the personal assets are insufficient, and account to the heirs or devisees therefor, deducting therefrom the payments made as above provided, together with a reasonable compensation for his own services, to be fixed by the court."

No compliance with the foregoing statutes was made by the executors. This official never at any time took possession of the real estate or attempted to collect the rents therefrom. Appellee, on December 22, 1928, filed its petition in the Kossuth County District Court for the purpose of obtaining judgment against Mary Murtha and Matt J. Murtha, as executor of the estate of P. J. Murtha, deceased. As part of the same proceeding, it was asked by appellee that the foregoing mortgage be foreclosed, and that a receiver be appointed to collect the rents and profits on the foregoing real estate during the period of redemption. Judgment, therefore, was obtained in that proceeding against Mary Murtha and Matt J. Murtha, as executor of the P. J. Murtha Estate, for the amount claimed, and the mortgage was foreclosed April 4, 1929. Although a judgment and decree was entered, as above explained, the receivership cause was continued without prejudice until after the execution sale under the foreclosure.

So the land thereafter was duly sold upon execution, re-

sulting in a deficiency judgment of $400. Consequently, on May 28, 1929, the district.court heard appellee's application for the appointment of a receiver. Default was made by Mary Murtha and the tenant, Peter Muller, but the appellant, Matt J. Murtha personally, and as executor, filed an answer, and a hearing was had thereon. Two defenses were interposed by appellant through his answer. He claims: First, that, the P. J. Murtha Estate, being in the course of administration by the Executor, the real estate including the rents and profits thereon is already *in custodia legis*, and therefore there is no occasion for the appointment of a receiver; and, second, that the land was leased by the widow, Mary Murtha, who is the life tenant, and the lease by her assigned to the appellant before the commencement of the foreclosure action. The district court refused to find according to appellant's contentions, and, as before indicated, entered judgment for appellee and appointed a receiver. Appellant asserts, as grounds for reversal, the two propositions contained in his answer.

I. Are the real estate and the rents and profits thereon now in the custody of the law to the extent that a receiver cannot be appointed? According to appellant they are, but appellee asserts to the contrary.

Underlying appellant's claim at this juncture are two thoughts: First, that the land and rentals therefrom are in the custody of the executor because P. J. Murtha died testate; and, second, that the district court considered such assets as belonging to the estate, and accordingly allowed Mary Murtha the rents for the time in question for her widow's yearly allowance under the statute. Convenience suggests that these propositions be considered separately. First, appellant relies upon In re Estate of Clark, 203 Iowa 224, for the proposition that the will placed the title of the real estate and the rents therefrom in the executor, as distinguished from the devisee. Manifestly, however, appellant misinterprets the Clark case. That decision did involve the question as to whether the devisee or executor could collect the rents and profits. When this court decided the point, it was declared, on pages 228 and 229 (of 203 Iowa):

"Because of the will, title was not cast upon the heir upon the death of the ancestor. The real estate was a part of the

estate, all of which was to be administered by the executor, as such.''

By that language, however, reference is made to the will, which, no doubt, because of its peculiar provisions, cast the title to the executor, as distinguished from the devisee. See In re Estate of Schofield, 178 Iowa 1260. Unless there is a special provision in the will thus giving the executor control and custody of the land and the rents and profits thereon, he does not have it (Cheyne v. Quackenbush, 198 Iowa 420), for in such event it belongs to the devisees under sections 11952 and 11953 of the 1927 Code, previously quoted. Dexter v. Hayes, 88 Iowa 493; In re Pennock's Estate, 122 Iowa 622; Tetzloff v. May, 172 Iowa 617; In re Estate of Dalton, 183 Iowa 1013. During the discussion in the Dalton case, we said on page 1018:

''The general rule is that rents accruing after the owner's death belong to the heirs or devisees, as an incident to the ownership of the land which descends to them.''

Likewise, it was said in In re Pennock's Estate (122 Iowa 622), supra, reading on page 626:

''There is no doubt that the administrator may, by direction of the court, take charge of any real estate belonging to the deceased, and apply the profits to the payment of claims against the estate of the deceased, whenever the personal assets of the estate are insufficient. Toerring v. Lamp, 77 Iowa 488. Without such order or direction of the court, the administrator has nothing to do with the real estate, save where there is no heir present and competent to take possession of the real estate; and in such case his possession is that of a trustee only. * * * 'Rents and profits, like the real estate itself, may be subjected to the payment of debts when the personal are insufficient in the manner provided; but not otherwise.' Dexter v. Hayes, 88 Iowa 493.''

Clearly, therefore, the executor in the case at bar had no right to the possession of the land or the use of the rents therefrom except under the contingencies named in sections 11952 and 11953 of the 1927 Code, because there is no claim that under the will of P. J. Murtha the executor was given such authority.

It is to be noted that the executor did not take the rents under the statute; hence they belong to the life tenant.

Second: regardless of the foregoing, it is contended by appellant that the district court considered the rents and profits as belonging to the estate and set the same off to Mary Murtha for the purpose of satisfying the statutory widow's allowance. This declaration does not conform to our interpretation of the record. In her application, Mary Murtha, among other things, stated to the district court:

"The undersigned applicant now further states to the (district) court that under the will of the said decedent (her husband) she was given a life estate in the real property above mentioned. That on or about the 28th day of July, A.D. 1928, which was before the admission to probate of the will of the said decedent and before the appointment of the executor, this applicant assumed control of said real estate and on said date leased the same for the farm year commencing March 1, 1929 * * *. That she has ever since said leasing treated the said lease as her own personal property, which has been assented to by the executor of the said estate ever since his qualification and appointment. That in the foreclosure actions above mentioned, applications have been made for the appointment of receivers and that this applicant may therefore be denied the benefits of the lease."

Thus it is evident that Mary Murtha did not consider that the rents in question belonged to the estate. Rather than so believing, she understood, according to her application, that she herself had possession of and owned such assets. Moreover, according to that application, the executor at no time had possession thereof, but the widow at all times was in custody of this particular property, and the executor acquiesced therein. Furthermore, the district court, in giving the widow the statutory allowance, rather confirmed than denied her possession and control of the rents and profits. The court's order approved the executor's action in acquiescing in the widow's possession of these rents. Also the district court, in its order, recognized that the rents would probably be taken over by the receiver under the appellee's application, and therefore made an alternative provision for the widow by allowing her, in lieu of the forego-

ing rents, $2,000 in cash. Hence, it is plain that the district court did not hold or consider that the rents and profits in question were in the possession of the executor or belonged to the estate. Under neither of appellant's above-named theories therefore can it be said that the assets in litigation were already in the custody of the law. Obviously they were not in such custody, but rather Mary Murtha had possession thereof. Therefore, there is no reason why the receiver, if the facts otherwise warrant, should not be appointed to take charge thereof. Mary Murtha was a judgment debtor. She and her husband's estate were both insolvent. A receiver, then, under the circumstances, could properly be appointed to collect the deficiency.

■ II. If, then, the district court's judgment cannot stand, it must be because the appellant obtained a superior right through the assignment of the Mary Murtha lease. That lease was dated July 28, 1928.

It is claimed by appellant that the lease was assigned to him December 29, 1928. But the petition asking for the receiver was not filed until January 9, 1929, and the original notices in such proceeding were served January 16, of that year. Thereby it is claimed that the assignment predates the application for the receiver. Much doubt appears, however, concerning when the alleged assignment was purported to have been made. Under the record, said date is rather obscure. Assuming, however, that it was December 29, 1928, yet the transaction cannot be sustained because we find there is no consideration supporting it and that the assignment was never completed.

Appellant claims that his father and mother owed him a note of $1,000. His mother, he said, assigned to him the lease in return for the $1,000 note and his oral agreement to pay her "a little money to live on as time went on." Matt J. Murtha, the appellant, was the executor of the P. J. Murtha estate. No claim was filed therein for this $1,000 note. So, too, it appears that Mary Murtha was not present when the assignment was made. Such transaction is alleged to have taken place in Archie Hutchison's office, at Algona. A significant fact is that the note was never cancelled or delivered to Mary Murtha, but retained at all times by the appellant. More than this, appellant did not advance any of the moneys agreed upon. Evidently no part of the consideration was paid to or furnished Mary Murtha. Said

alleged assignment seems never to have been completed. Clearly appellant knew that the receivership proceeding was pending and endeavored to avoid it.

The assignor, Mary Murtha, always treated the lease as her property. As late as March 12, 1929, after the alleged assignment, her application for widow's allowance was presented to the district court. In that application, Mary Murtha declared that the lease was her own personal property. There was no indication in such application that the lease had been assigned to appellant, but rather this thought was negatived; for the mother was asking that she be permitted to use the rents under the lease as a widow's allowance to support herself, during the statutory period provided therefor. Under all the circumstances, it is quite persuasive that the assignment was not legally made.

"An insolvent debtor is not permitted to fraudulently dispose of his holdings in order to hinder or delay his creditors." Erusha v. Wisnewski, 207 Iowa 1187.

Here the transaction is alleged to have been made between a mother and her son. She is an insolvent debtor and her creditor, the appellee is attempting to collect the deficiency judgment. Consequently, the testimony offered, together with all the facts and circumstances in the case, must be carefully weighed and considered. Saar v. Finkin, 79 Iowa 61; First National Bank v. Hartsock, 202 Iowa, 603; Hansen v. First National Bank of Dunlap, 197 Iowa 1101; Dimick v. Munsinger, 207 Iowa 354; Hansom v. Lochmiller, 207 Iowa 1315. It was said in Saar v. Finkin (79 Iowa 61), supra, reading on pages 63 and 64:

"We believe that many such family transactions take place entirely free from fraudulent taint. Again, we know that many are conceived and nurtured in fraud. Hence, where the effect is to leave the creditors unpaid, the transaction is viewed with suspicion. It is true there are no witnesses to contradict the intervenor and his witnesses as to the transaction, for it transpired entirely in the family; and there is much evidence, not recited in this opinion, very favorable to the intervenor, and on which a finding might have been based for him. But that does not show that there is no conflict of evidence. *It is not essential to a conflict of evidence that the testimony shall come from opposing*

*sides*: (the italics are ours) but if the statements and facts in evidence are such that they tend to lead the mind of the court to opposite conclusions as to a particular fact or issue, then there is a conflict of evidence, and its reconciliation, in a law action, is the peculiar province of the * * * court.''

A similar declaration was made in Hansen v. First National Bank of Dunlap (197 Iowa 1101), supra, reading on pages 1103 and 1104:

''Although the mere relationship between the parties to a contract does not per se constitute a badge of fraud, courts sense the obligation to scrutinize closely transactions between relatives when a creditor's interests are involved. Therefore, in dealing with this class of testimony, we necessarily, and perhaps unconsciously, give weight to it in the light of experience, and are influenced by the accordance of the evidence offered with facts within the realm of human conduct and experience. The circumstances surrounding the impeached transaction are mute witnesses in the case, and usually are vitally forceful and probatively cogent. We think in terms of their probability, and in the last analysis, the weight to be given the evidence rests, as Greenleaf said, 'upon our faith in human testimony, as sanctioned by experience.' We naturally ask, Is the proof offered to sustain the issuable fact reasonable,—that is, satisfactory or sufficient? Is it natural,—that is, in conformity to human conduct and experience or to the nature of things? Is the fact sought to be established corroborated? Is there an absence of conflicting testimony? These are the ordinary tests, and consciously or otherwise the human mind makes application of them in determining the truth of the matter in controversy.''

Considering, then, as we must, all the facts and circumstances in the record, it appears that the assignment is improbable and unlikely. There was no consideration for it and the transaction in any event was never completed. Inconsistency suggests that there was in fact no assignment. Consequently, we are persuaded, as was the district court, that there is no assignment. Appellee, then, under its mortgage, had a right to the receiver for the purpose of collecting the rents during the period of redemption.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.

FAVILLE, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.