EQUITABLE LIFE ASSURANCE SOCIETY, Appellee, v. FRANK H. HASTINGS et al., Appellees; C. H. WILLIAMSON et al., Appellants; ADAIR COUNTY, Appellee; ADAIR COUNTY BANK, Intervenor, Appellant.

No. 43748.

JUNE 15, 1937.

Wilson & Kellam and C. H. Williamson, for appellants.

Tinley, Mitchell, Ross & Everest and Musmaker & Musmaker, for Equitable Life Assur. Soc. of United States, Appellee.

DONEGAN, J.—On July 19, 1929, Frank H. Hastings and Sadie Hastings, his wife, executed a mortgage upon 145 acres of land in Adair County, Iowa, to Collins Mortgage Company, to secure their promissory note for $9,700, due December 1, 1934, with interest at 5 per cent per annum. The granting clause of this mortgage, in addition to the real estate, conveyed all the rents, issues, use and profits of said land, and the crops raised thereon until the debt secured by said mortgage shall be paid. This mortgage was recorded as a real estate mortgage, was also duly indexed in the index to the chattel mortgage records, and was thereafter assigned by the Collins Mortgage Company to The Equitable Life Assurance Society of the United States, a corporation, which is the plaintiff in this case.

On October 15, 1935, the mortgagors and title holders of the land, Frank H. Hastings and Sadie Hastings, for the recited consideration of $1.00 and other valuable consideration, executed a deed of the said land to C. H. Williamson. This deed stated that it is "subject to encumbrances of record and taxes but the grantee does not assume or agree to pay any of said encumbrances or in any way become personally liable for the payment of any of said indebtedness." On the same day said Williamson executed a lease of the land for the term March 1, 1936, to November 25, 1936, and thereafter as long as the first party

has right of possession and up to March 1, 1937, to Lloyd Mitchell for the stated rental of $900, and Mitchell executed a promissory note to C. H. Williamson for $900 due November 25, 1936. On October 16, 1935, C. H. Williamson executed an assignment of said lease and rent note to Adair County Bank.

The principal of the note and mortgage became due December 1, 1934, and on February 11, 1936, the plaintiff instituted this action for the foreclosure of the mortgage. The defendants were Frank H. Hastings and wife, Sadie Hastings, the makers of the note and mortgage; C. H. Williamson, the grantee in the deed from Hastings, and Lucy E. Williamson, his wife; Lloyd Mitchell, the lessee in lease from Williamson and maker of the rent note, and Mabel Mitchell, his wife; Adair County Bank, the assignee of the lease and rent note from Williamson; and Adair County, Iowa. The petition contained the usual recitals and asked for the foreclosure of the mortgage and for the appointment of a receiver to collect the rents and profits. Adair County Bank, the assignee of the lease and rent note, filed a petition of intervention alleging the assignment of the lease and rent note to it by Williamson; that they were purchased in good faith for a valuable consideration and without notice of any claim of plaintiff; that at that time no suit was pending affecting the title to the real estate; and intervenor asked that the prayer for the appointment of a receiver be denied, that plaintiff be decreed to have no interest in the real estate or the rents therefrom except such as were inferior to the interest of intervenor under the said lease, and that the rights and interests of intervenor be established and confirmed against all claims of the plaintiff. The defendant, Lloyd Mitchell, filed answer alleging the execution of the lease by C. H. Williamson to him, and the execution by him of a note for $900, and asked that his rights be protected. The defendants, C. H. Williamson and Lucy E. Williamson, filed answer alleging the purchase of the said land by deed, the execution of the lease covering the land to Mitchell for a rental of $900, the assignment of the lease and rent note to Adair County Bank, and asked that any claim against them be denied and that the application for the appointment of a receiver be denied. The plaintiff filed an answer to the petition of intervention of Adair County Bank and filed replies to the answers of Williamson and Mitchell. Trial was had to the court and, no pleadings having

been filed or appearance made by the defendants, Frank H. Hastings and Sadie Hastings, a default was entered against them. On the 25th day of March, 1936, the court entered a decree finding that the defendants, Frank H. Hastings and Sadie Hastings, were indebted to the plaintiff on the note and mortgage sued on in the sum of $11,892.65, with $38.40 costs and $158.93 attorney's fees, and that any right, title or interest of defendants to the real estate under foreclosure and to the rents, issues and profits thereof, was junior and inferior to the right, title and interest of plaintiff under the mortgage. Judgment was rendered against said defendant makers of the note and mortgage for said sum, and it was decreed that the same be a lien on the mortgaged real estate from the date of the execution of the mortgage, and it was ordered that the mortgaged land be sold and that a receiver be appointed to take charge of the real estate and collect the rents and profits thereof. From such decree the defendants, C. H. Williamson and wife, Lucy E. Williamson, Lloyd Mitchell and wife, Mabel Mitchell, and Adair County Bank appeal. No appeal was taken by defendants, Frank H. Hastings or Sadie Hastings, his wife, the makers of the note and mortgage, and this appeal does not raise any question as to the correctness of that part of the decree entering judgment against the said defendants and foreclosing the mortgage and ordering the sale of the real estate described therein. The complaint of the appellants herein is to that part of the decree finding that any right, title or interest of the appellants to the rents, issues and profits of the land is junior and inferior to the right, title and interest of the plaintiff to such rents, issues and profits under the mortgage, and to the appointment of a receiver to take immediate possession of the premises and to lease the same for the period commencing March 1, 1936, and ending February 28, 1937, and to collect all rents accruing subsequent to the commencement of the foreclosure action.

 In this case we have a mortgage of real estate also conveying the rents, issues, uses and profits of the mortgaged land, and the crops raised thereon, which was recorded as a real estate mortgage and indexed in the chattel mortgage index. Under our holdings this mortgage was a mortgage on the land described therein, and it was also a valid chattel mortgage on the rents, issues, uses and profits of the land and the crops raised thereon. No question is raised as to the scope or effect

of this mortgage, insofar as it was a mortgage on the real estate. The only question here in controversy is in reference to the existence and extent of a lien on the rents, issues, use and profits of the land and the crops raised thereon, growing out of the chattel mortgage provisions.

In the recent case of Equitable Life Insurance Company v. Brown et al., 220 Iowa 585, 590, 262 N. W. 124, 127, appellants claimed there was a distinction between the use of the word "crops" and the words "rents, issues, uses and profits"; that the so-called "chattel mortgage clause" in real estate mortgages is effective only as to crops; and that rents, issues, uses, profits and income of real estate, being incorporeal rights, are not such personal property as it subject to a chattel mortgage. This court refused to recognize such distinction and held, "that the wording of the chattel mortgage clause in the mortgage in controversy in this case is sufficient, not only to cover the crops, but rents, issues, and profits, and that the written leases and rent notes accompanying the same, involved in this litigation, come within the classification of rents, issues, and profits of the real estate, and that the same were conveyed in the granting clause of the mortgage in question." The essential ultimate facts in that case were almost identical with the facts in the instant case: the mortgage, in addition to real estate, conveyed rents, issues, uses, profits, income and crops, and provided for the appointment of a receiver; it was recorded as a real estate mortgage and was also indexed on the index of chattel mortgage records; the owner of the land leased it by written lease accompanied by rent notes, and assigned both lease and notes to a third person, before the commencement of the foreclosure action; the lease was executed in the fall of the year when no growing crops were on the land; the term of the lease did not begin until the first of March following; and the foreclosure action was commenced before the term of the lease began and before the seed for any crops had been planted. The appellants claimed that the execution and assignment of the lease and rent notes by the mortgagor, before the commencement of the foreclosure action, gave the assignee the right to the rents; that any rights of the plaintiff mortgagee to such rents did not arise until the filing of the foreclosure petition; and that the rights of the assignee of the lease and rent notes were, therefore, superior to those of the mortgagee. This court held that the chattel mortgage provisions

of the mortgage there involved were sufficient to constitute a valid chattel mortgage on the rents, issues, profits and crops, and that, from the time it was indexed, the chattel mortgage gave notice to the world of the plaintiff's claim to a lien on the rents, issues, profits and crops grown on the mortgaged land; that when the lessee leased the premises from the owner, who was also the mortgagor, he did so with constructive notice that the rents, issues, profits and crops produced on the land were covered by this mortgage; that, having this notice and knowledge, his rights as lessee could rise no higher than those of his lessor, the owner and mortgagor; and that, likewise, the assignee of the lease could acquire no higher or greater rights than those of his assignor, the owner and mortgagor.

The one important particular in which the facts in the instant case differ from those in the case of Equitable Life Insurance Company v. Brown et al., supra, is that, in that case the ownership of the land remained in the mortagor, while, in this case, the mortgagor sold and conveyed the land, and the lease and assignment were made by the purchaser. In this case, the owner and mortgagor, Hastings, sold and conveyed the land to Williamson, and Williamson executed the written lease to Mitchell and the assignment of the lease and rent note to the Adair County Bank; while, in the cited case, the owner, who executed the mortgage, did not sell or convey the land, but continued to be the owner, was the lessor in the lease, and executed the assignment of the lease and rent notes. It will be noted that, in the cited case, this court specifically referred to the fact that the lease was taken from the owner, who was also the mortgagor, and held that persons dealing with the mortgagor were charged with notice that, as to him, the rents, issues, profits and crops were subject to the provisions of the mortgage, and could not acquire any greater rights in such rents, issues, profits and crops from the mortgagor than were owned by him. In the instant case, however, as the mortgagor, Hastings, was no longer the owner of the land at the time the lease was executed and assigned, we are confronted with a different proposition. The law seems well established that, while a chattel mortgage of the future crops, or of other chattels which are to come into existence in the future, is valid, there can be no actual lien on such crops or other chattels until they do come into existence. Until that time, the mortgage gives no more than a right to a lien, or, as it is sometimes

called, a potential lien, to become effective when the crops or other chattels come into existence. As said in 11 C. J., 443:

"Where a mortgage is given on crops, the seeds to produce which have not been sown, it is held in some jurisdictions, in the absence of statutory provisions to the contrary, that the mortgage is void at law as being a mortgage on future property, although it may confer a lien on the crop, on its coming into existence, which a court of equity will enforce against persons other than bona fide purchasers without notice; but in most jurisdictions such mortgages are upheld either by force of express legislative enactment, or on the theory that the crop has a potential existence sufficient to give the mortgage validity. It should be noted, however, that a chattel mortgage on crops, to be thereafter grown, gives the mortgagee no interest in, or lien on, the land, but *attaches only to the interest which the mortgagor may have in the crops when they come into being.*" (Italics are ours.)

The case of Fawcett Investment Company v. Rullestad, 218 Iowa 654, 656, 253 N. W. 131, 132, 94 A. L. R. 800, involved the foreclosure of a real estate mortgage which also conveyed future rents, profits and crops accruing, grown or raised on the real estate during the life of the mortgage. The mortgagor died, action for foreclosure was commenced, and the petition also asked for the appointment of a receiver to lease the premises and collect the rents accruing thereafter and during the period of redemption. The appointment of a receiver was resisted, on the ground that the crops involved came into being long after the death of the mortgagor, and were raised by tenants of the estate to whom the land had been rented by the administrator with the consent of the heirs. The trial court refused to appoint a receiver and the plaintiff appealed. In affirming the case, this court, speaking through Mr. Justice Stevens, said:

"It will be observed that the mortgagor died in October, 1930; that the issues and profits arising out of the land which are here involved accrued during the years 1931 and 1932. It is well settled in this state that a chattel mortgage upon crops to be grown is valid, but the lien, of course, cannot attach until the crops come into being. Norris v. Hix, 74 Iowa 524, 38 N. W. 395; McMaster v. Emerson, 109 Iowa 284, 80 N. W. 389.

"All of the chattel property now involved was grown after

the death of the mortgagor. It never came into existence during his lifetime. The controversy here presented does not involve an issue of priority between respective lien holders, but the question is: Did the lien of appellant's chattel mortgage, which was filed for record in the chattel mortgage records of the county where the crops were grown, upon the same coming into existence, become a lien thereon? Were they in any legal sense the crops of the mortgagor? It is the general rule that rents accruing after the death of the owner of real estate belong to the heirs or devisees as an incident to the ownership of the land. In re Estate of Dalton, 183 Iowa 1013, 168 N. W. 332; First Nat. Bank v. Murtha, 212 Iowa 415, 236 N. W. 433. * * *

"In the case before us, the property upon which appellant claims a chattel mortgage lien came into existence many months subsequent to the death of the mortgagor. The crops were no part of the realty and, in the absence of the provision of the mortgage above quoted, appellant would have no lien whatever thereon. This, as previously stated, is fully recognized by counsel. Chelswick could not have given a valid chattel mortgage upon property which could not, in the very nature of things, have accrued to him, although the same was certain to come into existence. Upon his death, the real estate descended to his heirs who immediately became entitled to receive the issues and profits arising therefrom. McMaster v. Emerson, 109 Iowa 284, 80 N. W. 389, lends some support to this conclusion. None of the recent decisions of this court involving controversies as to the priorities of liens cited by appellant are in point in this case. The correctness of the conclusion reached herein that appellant did not have a lien upon the crops involved would seem to be obvious. The judgment is affirmed."

See, also, the annotation accompanying the above case of Fawcett Inv. Co. v. Rullestad, in 94 A. L. R., commencing on page 803, and cases therein cited.

■■■ Appellee contends that the whole transaction, by which the defendant, Williamson, became the owner of the land and executed the lease, which was afterwards assigned to the bank, is tainted with fraud and should not be allowed to stand as against the rights of the plaintiff to the rents, issues, profits and crops under the mortgage. As to the issue of fraud, of course, the burden would be upon the appellee, and, in our opinion, this

burden has not been sustained. The fraud alleged seems to be that, in purchasing the land and executing the lease and assigning the same, Williamson did so with full knowledge of the contents of the mortgage; that this transaction was but one of many similar transactions which have been conducted by Williamson with the assistance of the bank; and that a court of equity should not allow the appellants to profit at the expense of the appellee. The difficulty with this contention is that we are unable to see wherein the matters alleged constitute fraud. While the consideration named in the deed from the mortgagor, Hastings, to the purchaser, Williamson, was $1.00, the evidence indicates that the actual consideration was $100. There was no legal obstacle to prevent the sale of the land by Hastings to Williamson. The title to the land was conveyed to the purchaser by a deed. We cannot say that the consideration was so inadequate as to indicate a fictitious or fraudulent conveyance from Hastings to Williamson. So far as appears from the record, there was no agreement or understanding between Hastings and Williamson which would prevent the sale and conveyance from being a valid transaction. If, as the authorities indicate, a chattel mortgage on crops and on the rents and profits of land, to come into existence in the future, is good only as against the interest of the mortgagor in such crops, rents and profits at the time they come into existence, it would seem that, by selling and conveying the land prior to the crops coming into existence, the mortgagor, Hastings, had no interest in the land that would entitle him to any interest in the crops, rents, issues and profits therefrom, when they did thereafter come into existence. It may be that the conditions brought about by the depression in the value of farm lands, and the foreclosure of many mortgages, have furnished an opportunity for speculators to profit at the expense of mortgage holders, by pursuing the methods followed in this case, but we are unable to see how the courts can prevent such speculators from exercising the rights that the law gives them. If any relief is to be had by mortgagees under these conditions, it seems to us that such relief must come from the legislative branch of the government and not from the courts.

The trial court appointed a receiver to collect the rents of the mortgaged real estate, and authorized him to lease the land from March 1, 1936. The lease executed by Williamson, the purchaser of the land, and assigned to the bank, was for the

term, March 1, 1936, to November 25, 1936, and thereafter as long as the first party has right of possession, up to March 1, 1937. It is true, of course, that any right of Williamson or his lessee, or of the assignee of the lease, could not extend beyond the period of redemption; but, as the decree was not entered in this case until March 25, 1936, it is apparent that the lease executed by Williamson to Mitchell would be effective for the full term, March 1, 1936, to March 1; 1937. So far as the record shows, the receiver may have been acting from the time of his appointment, and may have collected the rents for the term of the lease from Williamson to Mitchell. As we hold that the bank was entitled to the rent for this term, under its assignment, the receiver has no right to such rents and, if he has collected them, he should pay them to the bank. As any action the receiver may have taken as to the rental of the property following March 1, 1937, cannot affect the rights of the parties under the lease executed by Williamson to Mitchell and assigned to the bank, we see no reason why the appointment should not be allowed to stand. The appellants, of course, should not be required to pay any of the costs connected with the receivership or with the appeal in this case.

The decree of the trial court is, therefore, reversed and the case is remanded with instructions to the trial court to enter a decree in conformity with this opinion.—Reversed and remanded with instructions.

RICHARDS, C. J., and PARSONS, HAMILTON, SAGER, and STIGER, JJ., concur.