IN RE ESTATE OF J. H. THOMPSON.

No. 46418.

FEBRUARY 8, 1944.

Rudolph & Rudolph and Dalton & Dalton, all of Atlantic, for appellants.

R. J. Swanson, of Red Oak, and Addison J. Kistle, of Council Bluffs, for appellees.

OLIVER, J.— Testator's real estate consisted of a home in Red Oak and three farms. The will gave the home to the wife, absolutely, and then provided:

"To my wife, Alice Berneice Thompson, I will, devise and bequeath all the income, use and rentals arising after my death and during the term of her natural life from all of the remainder of my property, be it real, personal and mixed * * *."

The will directed the wife to care for the farms, empowered her to renew or extend the mortgages thereon, and stated that the provisions for her benefit were in lieu of dower and all other statutory rights.

"Subject to all of the foregoing provisions" the three farms were devised to the trustees, who were directed to use the net earnings to discharge mortgages against the farms. Thereafter, the net earnings of each farm were bequeathed to certain of testator's nephews and nieces (or the issue of some of them)

during the lives of certain persons, at the termination of which the respective farms were devised to various nephews and nieces or their issue.

The wife was nominated executrix of the will. She acted as such from 1934 until January 24, 1943, when she resigned, and the administrators with will annexed were appointed and at once made the application to mortgage one of said farms. Objections were filed by the trustees and remaindermen. Trial to the court resulted in judgment and order that said real estate be mortgaged and objectors have appealed.

I. Testator's farms were rented to tenants (in part) for a share of the crops. Appellants contend the devise and bequest to the widow of the income and rentals from the farms did not include the landlord's share of the 1934 crops and that the proceeds of said share should be used to pay the debts and charges. Testator died June 24, 1934. The 1934 crops were then unmatured and the share rent was not due. The will gave to the widow "all the income, use and rentals arising after my death." The word "arising" has been defined as "originating" or "coming into being." It has been distinguished from but is sometimes used as the equivalent of "accruing." St. Louis & S. F. R. Co. v. Spiller, 274 U. S. 304, 47 S. Ct. 635, 71 L. Ed. 1060; 6 C. J. S. 336, 337. From the context it is apparent "arising," in this instance, was used in the sense of "accruing." While the obligations of the parties to the leases arose at their execution, the landlord's income and rentals may be said to have arisen when they accrued.

Clearly, the landlord's share of the 1934 crops was rentals accruing after testator's death. These rents to accrue were chattels real which were devised to the widow and did not pass to the legal representatives of testator's estate. In re Estate of Dalton, 183 Iowa 1013, 1018, 168 N. W. 332, 334; First Nat. Bk. v. Murtha, 212 Iowa 415, 236 N. W. 433.

The question here is not whether under some circumstances rents to accrue may be appropriated to pay estate debts. See Toerring v. Lamp, 77 Iowa 488, 42 N. W. 378. The devises and bequests to the collateral relatives were "subject to all of the foregoing provisions," which included those for the benefit of the widow. Testator's dominant intention, expressed in the

will, was that his widow, in lieu of her statutory rights, should be given the home and a life income for her support and benefit. The subjecting to estate debts of some or all of said income, instead of some of the real estate in which the widow has a life estate and the others the remainder, would not accord with testator's purpose. The trial court did not err in ordering that funds to pay debts and charges should be secured by mortgaging farm land rather than from income and rentals devised and bequeathed to the widow.

 II. Executrix was appointed July 5, 1934, and filed an inventory and a list of real estate. She filed reports in 1936 and 1941. The record, between 1936 and 1943, is replete with applications of creditors and beneficiaries for orders requiring executrix to make reports, pay debts, dispose of property to pay debts, and for her removal, and with orders requiring her to report. In 1940 the court ordered her to make application to sell real estate to pay debts. This was not done and her failure to dispose of estate property to pay debts was a ground for an application for removal made by other beneficiaries. Trial thereon was had but the trial judge became incapacitated and set aside the submission without rendering a decision. Executrix resigned on January 24, 1943, pending trial of an application made by creditors for her removal. On that date the court appointed appellees administrators c. t. a., and appellees formally approved various claims and made the application to mortgage real estate. Apparently, no claims had been filed for the debts secured by the existing mortgages on the farms.

The 1936 report of Mrs. Thompson, as executrix, intermingled the estate accounts proper with the farm accounts for 1934 and 1935. The 1941 report states she "is now advised" that all the income and rents after testator's death are her individual property; that she reports the same for the information of the court, and that she has paid taxes, interest on the farm mortgages, etc., and has maintained the farms as directed by the will. Said 1941 report contains an accounting of the disposition of the nonexempt personal property which came into her hands as executrix, all of which was cash or has been converted into cash, and it shows a balance of $563.57 available for the payment of debts and charges.

Unpaid claims filed, allowed, and listed in the application to mortgage exceed $2,000. It is clear, as found by the trial court, that there is not sufficient personal property to pay the debts and charges.

III. Section 11933, Code of Iowa, 1939, provides that real estate may be sold or mortgaged if the personal effects are found inadequate to satisfy the debts and charges. Appellants contend the application to mortgage should have been denied because not timely made. In re Estate of Spicer, 203 Iowa 393, 395, 212 N. W. 689, 690, states the rule applicable to such cases:

"The statute fixes no time limit for petition for the sale of real estate. The title of the heirs ought not to be clouded or in suspense indefinitely, and there should be some time when they may safely take possession and exercise their rights as owners. It is for, this reason that the application should be made within a reasonable time, and a long delay should be excused by showing the existence of equitable circumstances."

Prior to the resignation of executrix, efforts to accelerate payment of debts resulted in little progress. Reference has been made herein to various applications to require executrix to report, to pay debts, to dispose of property for that purpose, for her removal for failure to act, and to orders requiring her to report and to make application to sell real estate to pay debts. The delay was not due to acts of the creditors nor to lack of diligence on their part. Appellants will not come into enjoyment of the property until the death of the widow.

Further discussion of the record appears unnecessary. It amply justifies the finding of the distinguished trial court that there were equitable circumstances which excused the delay in making application to mortgage real estate.—Affirmed.

All JUSTICES concur.