ANNA ELSIE MEIER et al., executrices of estate of WEIBKE JO-
HANNSEN; ANNA ELSIE MEIER et al., appellees, v. EGGERT
JOHANNSEN et ux., appellants.

No. 47836.

(Reported in 47 N.W.2d 793)

666

May 8, 1951.

George H. Sackett and Charles I. Joy, both of Perry, for appellants.

Doran, Doran, Doran & Erbe, J. W. Jordan and Richard Jordan, all of Boone, for appellees.

THOMPSON, J.—Claus Johannsen died intestate on May 1, 1948, leaving surviving his widow, Weibke Johannsen, and three children, all adults—the plaintiffs, Anna Elsie Meier and Margaretha L. Jessen, and the defendant, Eggert Johannsen. At the time of his death he owned 389 acres of farm land in Boone County, Iowa, a farm of 160 acres lying on the east side of a public highway, a farm of 149 acres across the road on the west side, and an 80-acre farm located from two to three miles north of the other two. For about twelve years prior to the death of his father Eggert Johannsen had operated all three of the farms under a rental agreement. Each of the farms was equipped with a set of buildings. Claus Johannsen and his wife, Weibke, lived on the 160-acre tract; Eggert and his family on the 149 acres; and there is no showing, and it is not material to the

issues herein, as to the occupancy of the buildings on the 80 acres.

There was a distinct lack of harmony between defendant Eggert Johannsen and his sisters, and in November 1948 the mother and the two daughters commenced an action against Eggert and his wife asking the partition of all three parcels of real estate. The two daughters, Anna Elsie Meier and Margaretha L. Jessen, had been appointed administratrices of the Claus Johannsen estate. The mother, Weibke Johannsen, died during the course of the litigation, leaving a will, and the two daughters were confirmed as executrices of her estate. A decree in partition was entered in the district court of Boone County on July 15, 1949, and L. A. Good and L. F. Pierce were appointed as referees. The decree ordered the sale of the land and directed the referees to collect the rentals for the crop year from March 1, 1949, to February 28, 1950, inclusive.

On August 18, 1948, a notice of termination of tenancy, under sections 562.6 and 562.7, Codes of 1946, 1950, was served upon the defendants by Weibke Johannsen, Mrs. Meier and Mrs. Jessen, who were at that time cotenants with Eggert Johannsen in the ownership of the realty. He did not vacate the premises at the end of the year but continued in possession and planted crops on all three farms for the 1949 season. No further action to oust him was taken by his cotenants, nor did he consult with them in any way as to the nature of the crops to be grown upon the different farms in 1949.

For the 1949 season Eggert Johannsen put the entire tillable land on the 160-acre farm, about 150 acres, in oats. He sowed no oats upon the 149-acre tract, where he resided, planting all of the cultivated portion, from 103 to 107 acres there, in corn. There were 17 acres of hay land and 12 of permanent pasture on this farm. The tillable land, about 72.5 acres, on the 80-acre parcel was sowed entirely in oats. When the oats on the 160-acre and 80-acre tracts were ripe he combined them and hauled them to an elevator at Woodward, Iowa, where they were sold. He cut 20 acres of the corn on the 149-acre farm for silage before it matured. Apparently some of the rest was cut for the purpose of filling a silo on a farm belonging to defendant Tillie Johannsen, Eggert's wife. The remainder was put in a crib on

the farm and fed out to cattle during the winter. No weights or measures were taken or kept as to the amount of corn raised.

The referees in partition were appointed while the oats were being hauled to the elevator, and so far as the record shows the proceeds are still in the hands of the elevator operators. The total was $2430.62, and for this amount the defendants at the time of the trial offered to confess judgment. This offer was refused.

The contest here is, in form at least, between the referees on one hand and Eggert Johannsen on the other. The matter reached the trial court through an application by the referees asking that defendants be required to account for the rental of the farms for 1949 upon the basis of one half the crops raised thereon, with a reasonable cash amount for the land not tilled. During the hearing this application was amended to ask that, if the court could not determine by proper and sufficient evidence the amount of the crops raised, it allow in lieu thereof a reasonable cash rental for all the lands.

Defendants resisted both the original application and the amendment thereto by asserting that they had rented all of the farms from Claus Johannsen for about twelve years last past upon the basis of giving to Claus Johannsen all of the crops raised upon the 160 acres; to the defendants all of the crops grown upon the 149 acres and upon 11 acres of the 80-acre tract, and dividing equally the production from the remainder of the 80 acres; that they having held over for the year 1949 the law raises a presumption that their tenancy was upon the same terms. They tendered the proceeds of the entire oats crop grown upon the 160 acres, and one half of that on the 80 acres after deducting 11 acres.

The trial court found that there was no basis for a claim that defendants were holding over under the same terms; that they were obligated to pay a reasonable rent for the three farms; that there was not sufficient evidence from which the amount of the corn raised on the 149-acre tract could be determined, and therefore it was necessary to charge defendants with the fair and reasonable cash-rental value of the premises, which it fixed at $15 per acre for 329 acres, and $12 per acre for 60 acres on the 80-acre farm which had not been fall-plowed in 1948; a total

of $5655. The defendant, Eggert Johannsen, having a two-ninths interest in the realty, his share of the rentals was fixed in accordance therewith at $1256.67, which was deducted, leaving a sum of $4398.33, with interest from March 1, 1950, for which, with costs, judgment was rendered against both defendants, and from which they take this appeal.

The referees, being the applicants in that phase of the litigation which is involved in the appeal, will be denominated in this opinion as the plaintiffs. When the term "defendant" is used in the singular it will refer to Eggert Johannsen, the active movant in the transactions to which reference will be made.

The defendants assign four errors: (1) The refusal of the trial court to find that they were holding over under the terms of a previous lease agreement with Claus Johannsen (2) that the court erred in ruling there was insufficient evidence to determine the amount of crops raised on the farms during 1949 (3) (closely related to 2) that the court was in error in applying the rule of fair and reasonable cash rent, and that it should have found that the rental value was one half the grain plus reasonable rental for pasture and hay ground, and minus expense of seed and combining, and (4) that an allowance was erroneously made for rental of roads and land not rented or used by defendants.

I. It should be noted in passing that no question is raised here as to the right of the referees, representing cotenants with defendant in the ownership of the realty, to hold defendant liable for rent. Section 557.16, Codes of 1946, 1950, determines the right of cotenants out of possession to compel those in possession to pay the rental value of their proportionate part of the real estate. Defendants do not dispute this. The controversy centers around the measure to be used. Their first claim is that they should be considered as tenants holding over, and so liable to pay only under the terms of their previous contract. The trial court properly held that this position was not established by the evidence. The rule contended for by defendants is well-established, not only as to leases but as to other contracts as well. But it must be factually supported. We said in Friedman v. Weeks, 190 Iowa 1083, 1087, 181 N.W. 390, 391: "Concededly, there was a written lease for the first year; and if

defendants held over another year, it is presumed to be on the same terms, where there is no new arrangement, or unless the facts rebut the presumption."

In Merchants Trfr. & Stor. Co. v. Emerson-Brantingham Implement Co., 183 Iowa 533, 167 N.W. 472, we discussed the question somewhat at length, and announced the rule, followed in Friedman v. Weeks, supra, that the question is one of fact; and that the rule does not apply where the evidence shows that there was no agreement, express or implied, for a holding over under the same terms. In the case at bar the defendants had been advised by the notice served upon them on August 18, 1948, that the lease was terminated. True, they were not ejected from the farms on the following March 1, but this did not revive the lease. Suit for partition, of which defendants had full knowledge, was then pending; and if they elected to remain upon the realty and till it for the year 1949, without any arrangement with the cotenants out of possession, or the referees after they were appointed, they must have been under a legal duty to account for the reasonable rental value of the premises.

There is another sufficient reason why defendants cannot prevail at this point. Conceding, arguendo, that they established that the oral lease under which they held from Claus Johannsen provided that the lessor should have all the crops raised on the 160, defendants those grown upon the 149 acres and 11 acres of the 80, and the remainder of the produce from the 80 to be divided, it is evident that they did not proceed, fairly and equitably at least, upon any such contract. The result contended for here by defendants would leave nothing for the cotenants except the oats crop, giving all the corn to defendants. Any adult resident of the agricultural empire which comprises the State of Iowa knows that farm leases are not made in that way. Defendant did not consult anyone else interested about how the crops should be divided among the three farms; he acted strictly upon his own initiative in putting all of the landlord's share— the 160 acres and one half of most of the 80—in oats, reserving all of the corn for his own. In so doing, he sowed oats upon stubble land where oats had been raised the year preceding, a most uncommon farming practice and one requiring much explanation to a court of equity. It is not easy to believe that the

so-called "hold-over" lease between defendant and his father, Claus, contemplated any such manner of operation, or that Claus, or his widow or heirs, would have nothing to say about the location of the various crops. Defendant, as a witness, attempts to justify his conduct in this regard by saying that the 160 was too wet to plow in the spring of 1949. However, oats are planted much earlier than corn; and it is difficult to understand how defendant could have known when he sowed the oats that the ground would be too wet for corn when the corn-planting season arrived. The record shows that defendant was equipped with tractors capable of plowing 25 acres per day, so that that phase of the operation would have required little time. A strong impression arises at this point that defendant was attempting to take an unfair advantage of the other parties interested by obtaining all of the much more valuable corn crop for himself. If, in so attempting, he finds himself hoist by his own petard, and that his last state is worse than his first, he cannot justly complain.

II. It is defendants' next assignment of error that, if this court should hold that the trial court properly found they were not tenants holding over under the terms of a prior lease, it should reverse because there was sufficient evidence from which the court could have determined the amount of crops, particularly of corn, raised upon the land in 1949, and should have fixed the rental accordingly; and (combining assigned errors (2) and (3)) that therefore the court should not have taken the reasonable cash-rental value as the measure of defendants' liability. This presents a somewhat more difficult problem than Division I and requires some additional detail as to the evidence.

It has been pointed out that the only corn raised upon the three farms in 1949 was that grown upon the one where defendants lived, and which they claimed as entirely their own. It was here that the trial court found an insufficiency in the evidence as to the amount. Clearly, the plaintiffs were entitled to an accounting from defendants. While it is not always that the duty to account falls upon the defendant in an accounting suit, it is generally so when the action is in the nature of one for a discovery; that is, where the proof is in the knowledge of the defendant and plaintiff does not have adequate means of

672

information. Of course, plaintiff must first establish his right to an accounting. Oskaloosa Savings Bank v. Mahaska County State Bank, 205 Iowa 1351, 219 N.W. 530, 60 A. L. R. 1204; Davenport v. Schutt, 46 Iowa 510; 1 C. J. S., Accounting, section 21. Here, as pointed out in Division I above, defendants were not entitled to rely upon a claim that they were holding over under the terms of a prior lease. It was their duty, if they wished their liability for rentals to be measured by the yardstick of a crop division plus a reasonable cash rent for the untilled ground, to be prepared to show how much grain was raised. The matter was almost entirely in their hands, in so far as the corn crop was concerned, but instead of keeping an accurate account, they cut a considerable amount for silage before it matured; they made no measurement and took no weights of the remainder, but after putting it in a crib proceeded to feed it out, so that by midwinter it was gone. Some of the corn cut for silage was used on another farm, owned by defendant Tillie Johannsen. The only manner in which any account of the actual amount of the corn raised can be determined consists of the testimony of defendant Eggert Johannsen, his son, and an employee. Each of them says that the corn totaled about 40 bushels per acre. Each arrives at this conclusion from estimating it in the field, either while still on the stalk or as it was picked and came into the wagon. Much of the corn was blown off the stalk before husking, they say; and this was not picked up, but they estimate it amounted to about ten bushels per acre. On the other hand, one of the referees, a man of long experience in farm management, walked into the field before the corn was picked and estimates the yield at 50 bushels per acre. Several neighbors with adjoining or near-by farms testified that the yield of their corn was from 50 to 60 bushels per acre.

█ The difficult question here is whether the trial court was justified in holding that there was not sufficient evidence from which to determine the amount of corn grown. If defendants' estimates are sound, there was some evidence. However, we believe the trial court was right. We have pointed out in Division I that the conduct of Eggert Johannsen falls considerably short of the requirements of fair dealing. This, in turn, casts some doubt upon the entire fairness of his testimony. The trial court

found the evidence of the amount of corn "inadequate and unsatisfactory" as a basis for a finding thereon. He may well be justified in his position not only by the meagerness of the evidence offered in quantity, but in quality as well. There was a strong incentive for defendants to make their estimate low; and in view of the fact that they had a duty to be prepared to account accurately, and the opportunity so to do by weight or measure, and failed to keep any record, we conclude that the able and experienced trial court properly determined this issue.

While the case was in equity, and is here before us for trial de novo, it is peculiarly one of that class in which we give considerable weight to the findings of the trial court upon fact questions. The credibility of the witnesses had much to do with the weight to be given to defendants' evidence upon the amount of corn raised; and we agree with the trial court that it was "unsatisfactory." Here, Hatheway, executrix, v. Hanson, 230 Iowa 386, 396, 297 N.W. 824, 828, is much in point. We said:

"This case resolves itself in the final analysis on the credibility of the witnesses. We have repeatedly recognized that, even though an action in equity is triable here de novo, since the trial court has the witnesses before him and is in far better position to judge their credibility, considerable weight is given to the findings of the trial court on such issue. In re Estate of Brooks, 229 Iowa 485, 492, 493, 294 N.W. 735, and cases cited. This is particularly true where the good faith of a party is in issue."

Having found against the defendants upon the question just discussed, it became the duty of the court to fix the reasonable cash-rental value of the lands occupied by defendants during the 1949-50 crop season. In Daniel v. Daniel, 116 Wash. 82, 87, 198 P. 728, 730, 27 A. L. R. 177, 180, this question is touched upon. An accounting action had been brought by one cotenant against another who had been for some time in possession of all of the real estate, but had failed to keep any proper record of the rents and expenses. The Washington Supreme Court said:

"The appellant kept no books of account showing either the gross earnings of the property or the cost of its upkeep during the period of the accounting, and he is not in a position

to complain because the evidence of the respondent was more or less indirect and circumstantial. *Since it was his duty to account, and since his withholding of the respondent's share of the earnings was wrongful,* courts of equity do not in such cases (in the language of Mr. Justice Story) 'proceed upon the notion that strict justice is done between the parties, but upon the ground that it is the only justice that can be done, and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal.' " (Italics supplied.)

In Cain v. Cain, 53 S. C. 350, 31 S.E. 278, 69 Am. St. Rep. 863, the rule was announced that if the cotenant in possession fails to show by proper evidence the amount he has received, the plaintiff may prove the fair rental value of the premises. It is said in 14 Am. Jur., Cotenancy, section 101: "* * * when a co-owner of land who had been in exclusive possession of the common estate is sued for an accounting, he can limit his liability for the rents and profits by showing the amounts he actually received; but, if he fails to do so, the plaintiff may prove the receipts by any other competent evidence, such as testimony showing the fair rental value of the premises."

These authorities are cited to show that it is the duty of the cotenant in possession to render a proper accounting, and that if he fails to do so the court will accept the best evidence available. The Washington and South Carolina courts, and the writer of the quoted language from American Jurisprudence were following the rule that in accounting between cotenants the one in possession is bound to account only for the rents received by him. But in Iowa the plaintiff is aided by section 557.16, above referred to, which permits a tenant in common to recover from his cotenants in possession his "proportionate part of *the rental value* of said real estate * * *." (Italics supplied.) This was the rule applied by the trial court in determining the cash rental after defendants had failed in their duty to make a proper accounting of the grain rentals. We agree with the court's action and with the amounts fixed, which were substantiated by the evidence.

III. Defendants' final complaint is that they should not be compelled to pay rental for the amount of the farms contained

within the adjoining roads, for ten acres of the 160-acre tract which were in buildings and lots, and for certain nontillable land on the other two farms; in all, 19 acres. It is true that a small part of every Iowa farm which adjoins a public highway is contained within the highway; that is, the farm runs to the center and includes one-half of the roadway. But we are cited to no authority upon the proposition that rentals should be reduced proportionately, nor are we given any measure of the exact amount of roadway included in the lands involved herein. As to the nontillable land, many farms include a small area which is less valuable than the rest, and this is taken into account in fixing the reasonable rental value. We assume the trial court did so.

However, it does appear that the defendants did not have the use or occupancy of the buildings and lots on the 160-acre farm. The buildings were occupied by others; and while the situation as to the lots surrounding them is not clear, they were appurtenant to the buildings, and we assume were used in connection therewith. We are disposed to hold that defendants should not be charged with rental for the ten acres here. The judgment entered by the trial court will be reduced in the sum of $116.67, with interest reduced accordingly. As so modified, the judgment and decree is affirmed. Costs taxed to defendants. —Modified and affirmed.

All JUSTICES concur.