NANCY WILLIAMS et al., appellants, v. MRS. C. C. MORRISON et al., appellees.

No. 47857.

(Reported in 48 N.W.2d 666)

JUNE 5, 1951.

REHEARING DENIED SEPTEMBER 21, 1951.

Jones, Cambridge & Carl, of Atlantic, and Kimball, Peterson, Smith & Peterson, of Council Bluffs, for appellants.

McGinn & McGinn, Addison G. Kistle, and Albert McGinn, all of Council Bluffs, for appellees.

THOMPSON, J.—This action was brought by Woodman Morford and Roscoe S. Jones, as administrators c.t.a. of the estate of Ed Long, deceased, with whom are joined the remaindermen under the will. Defendants are the heirs-at-law and the administratrix of the estate of Alice Long, who was the widow of Ed Long and the life tenant by the terms of his will. The action was in form a quieting title proceeding in equity. It is the contention of the plaintiffs that Alice Long, as life tenant having possession of all the property of the estate of her husband, loaned the sum of $12,000 from the corpus of the estate to E. A. Rudolph and S. H. Rudolph; and that a few years later, the Rudolphs having failed to meet the stipulated payments and claiming to be unable to do so, the loan was settled by the conveyance by the Rudolphs of 160 acres of land in Cass County, Iowa, upon which a mortgage had been given by them, as security for the loan, to Alice Long. Alleging these facts, the plaintiffs contend that the real estate in fact belongs to the estate of Ed Long and that it was in fact personalty in said estate; and they ask that title be quieted in the administrators. The defendants deny that the $12,000 which was loaned to the Rudolphs came from the corpus of the Ed Long estate, but assert that it was the money of Alice Long individually. They further contend that there is a misjoinder of parties and causes of action; and that the action was not properly brought in equity, but that it should have been tried in probate, as a part of the pro-

ceedings in the Ed Long estate. ·A statement of the facts shown in evidence becomes essential at this point.

Ed Long died, a resident of Cass County, on August 27, 1926. He left no issue; but his wife, Alice Long, survived, until her death on October 19, 1939. She died intestate, and the defendants herein are her administratrix and heirs-at-law. The will of Ed Long, after providing for payment of debts and devising in fee simple to Alice Long the homestead in Atlantic and giving her the furniture therein, set up a life estate for her, as follows:

"Paragraph 4. All the rest, residue and remainder of my property and estate, real, personal, and mixed, of which I shall die seized and possessed, or to which I may be entitled at the time of my death, or which I shall own at the time of my death, wherever found or situated, I will, give, bequeath and devise to my beloved wife, Alice M. Long, for and during the term of her natural life, giving to her the right to use and enjoy the real estate and rents and profits thereof during her lifetime, and giving her the right to manage, possess, and control the personal property and to change the form thereof, and to invest and reinvest the same during the term of her natural life, and I exonerate her from qualifying as trustee and from giving any bond in order to be entitled to receive and possess and manage the personal property."

The will then proceeded to name the remaindermen who should take after the death of Alice Long, and nominated her as executrix without bond. She qualified as such executrix and proceeded to take charge of the property of the estate. That by her conduct she elected to take under the will seems beyond doubt, and it is not contended otherwise. She filed an inventory, but made no reports of her management of the estate during her lifetime. Shortly after her death the present administrators c.t.a. were appointed on October 21, 1939. The petition herein was filed by them on May 21, 1941, with amendments on December 3. 1941, and September 3, 1943. The prayer was that the shares of the plaintiffs in the 160-acre farm be confirmed, that Alice Long be declared to have been a trustee for the remaindermen holding the property in trust for them; that a receiver be appointed; that

the administratrix of the Alice Long estate be required to account for the rents and profits since the death of Alice Long; and that title be quieted in the estate of Ed Long. Defendants by their answer raised the question of misjoinder of parties and of causes of action, denied that any of the corpus of the Ed Long estate was used in making the Rudolph loan which was later converted into the 160-acre farm involved in this litigation; and by implication and argument, at least, contend that plaintiffs' only remedy was in probate in the nature of a demand for an accounting in the Ed Long estate, which was still open.

The trial court found as a fact that the $12,000 loaned to the Rudolphs came from the principal of the personalty of the Ed Long estate; but he was of the opinion that plaintiffs' only remedy was in probate, in the nature of a request for an accounting in said estate. Upon that ground he dismissed plaintiffs' petition, and so we have this appeal.

For the sake of clarity, it is pointed out that there are actually three farms to which reference is made and which figure in the evidence in this case. Ed Long died seized of one farm of 240 acres, known as the "home farm", which was clear of encumbrance and was the only substantial asset of the estate, either realty or personalty, apparently remaining upon the death of the life tenant, Alice Long. He also owned at his death a second farm of slightly over 135 acres, which was encumbered by a mortgage in the principal sum of $9000, and which was later taken over by the mortgage holder upon foreclosure. The third farm is the 160-acre tract actually involved in this litigation. Other facts will be referred to in the opinion which follows.

■ I. It is apparent that a factual question should be first determined. If the life tenant did not use money belonging to the corpus of her husband's estate in making the loan to the Rudolphs, then the litigation is at an end and plaintiffs cannot prevail. The trial court held with plaintiffs on this point; but since the matter is here for trial de novo we are required to examine into this question of fact and to determine whether the conclusion of the able trial judge was right. We are of the opinion that he correctly decided this issue.

We have pointed out that Alice Long, during her lifetime, made no reports to the court, except for the filing of the required

inventory and preliminary inheritance-tax schedule, and some applications for authority to pay debts. These show total personal property of the estate valued at $21,700.37; but the total of mortgages payable to the estate is placed at a value of $11,000, including interest; while the record shows that the note and mortgage executed by Louisa M. Harris and secured by land in Nebraska were paid on March 5, 1928, in the sum of $13,041.44. The actual value of the personalty was therefore presumably somewhat larger than the inventory showed. The preliminary inheritance-tax report referred to estimated debts of the estate, without itemizing them, as being in the sum of $17,500. From this, defendants argue that, there being a difference of only approximately $4000 between the listed personalty and the debts, Alice Long could not have taken $12,000 from the personalty for the Rudolph loan. However, they are here overlooking the fact that there was included in the total of $17,500 estimated debts the sum of $9000 represented by a mortgage executed by Ed and Alice Long upon the 135-acre farm to which they had title; which mortgage was foreclosed and was never paid by Alice Long or by the Ed Long estate. Consequently, the personalty of the estate was not diminished by the amount of the mortgage; and since the other debts of the estate, as listed and paid, amounted to no more than $7000, defendants' position at this point is clearly untenable. There remained ample funds from the personalty to make the Rudolph loan from the corpus of the estate.

The Harris loan, as above noted, was paid on March 5, 1928. The proceeds were deposited by Alice Long, the then acting executrix, in her account as such executrix, in the Whitney Loan & Trust Company in Atlantic. On June 1 of the same year she transferred $12,000 from the executrix' account to a savings account in her own name in the same bank; and on June 7 following there was checked from the executrix' account to S. H. Rudolph the sum of $5000 as a loan. On October 1, 1928, Alice Long loaned S. H. Rudolph an additional $5000, this coming from her savings account to which she had transferred $12,000 on June 1 as above noted. Mr. Rudolph, who was her attorney at the time, as a witness called by plaintiffs, testified that: "I had examined her account personally and knew what the amount was on deposit at

the time, and told her she would have to transfer it from the Ed Long estate to her individual deposit." Mr. Rudolph further testified that there was an additional loan made sometime in the early spring of 1930 for $2500. He then says: "I can't recall the date at this time, but there was a note given combining the two original loans in the amount of $12,000." Actually, the $12,000 note and mortgage seem to have been given on February 1, 1930. The Alice Long checking account, into which all funds both from the estate account and her own savings account seem to have been eventually concentrated, shows a check to S. H. Rudolph on February 10, 1930, in the sum of $1082. Whether this was involved in the $12,000 note and mortgage and the loan of $2500 was actually made later, as argued by defendants, we do not know. The failure of Alice Long to keep accurate accounts and to make reports to the court as executrix of the estate has left many of these items in confusion. We must accept Mr. Rudolph's testimony and that of the certified public accountant hereinafter referred to as the best evidence available.

We necessarily arrive at the conclusion that the $12,000 represented by the Rudolph note and mortgage came from the corpus of the Ed Long estate, and from funds of said estate which Alice Long held as life tenant. There are many things which point in this direction. On October 19, 1926, Alice Long asked a widow's allowance in her husband's estate, asserting that she "has no funds or property of any extent in her own right, other than her interest in the estate of Ed Long under his last will and testament." It is not likely that she would have accumulated sufficient funds of her own in less than two years to make the two advancements totaling $10,000 which Rudolph got in June and October 1928. Some argument is advanced by defendants concerning the widow's allowance granted her in the sum of $2000. But this did not go into the loan to Rudolph because we find the statement in the detailed report filed on January 26, 1940, by the defendant Mrs. C. C. Morrison, as administratrix of the Alice Long estate, that "said widow's allowance has never been paid in said estate and is a claim, lien and charge upon the estate of said Ed Long."

Nor can we follow the contention of defendants that Mrs. Long was herself actively engaged in the livestock business, and

so it may be presumed that she had gained sufficient funds of her own to make the loans, or that she had made permanent improvements on the 240-acre farm. Defendants offered no evidence, so their claim on these, as on all other points, must rest upon what may be gleaned from the reports filed in the Ed Long estate and introduced in evidence by plaintiffs, or from other evidence tendered by them. We have pointed out that Alice Long herself made no detailed reports of her doings, either as trustee or executrix. Beyond asking authority to pay claims, and for a widow's allowance, and filing an inventory and preliminary inheritance-tax report, she did nothing in the approximately thirteen years she lived and held the property of the estate as a life tenant. She was, in effect, a trustee of the property for the remaindermen. In Heintz v. Parsons, 233 Iowa 984, 990, 9 N.W.2d 355, 357, this court, speaking through Justice Smith, said: "Where the life tenant is given possession of the fund he becomes a trustee or quasi trustee for the benefit of the remainderman."

In 31 C. J. S., Estates, section 34, pages 42, 43, the rule is thus stated:

"The relation of a life tenant to a remainderman or reversioner is frequently termed that of a trustee or quasi trustee. The life tenant is a trustee in the sense that he cannot injure or dispose of the property to the injury of the rights of the remainderman * * *."

It was the duty of Alice Long to preserve the corpus of the trust estate for the remaindermen. It was in her possession, and she had the right, under the will, to alter its form and to invest and reinvest it. But it still remained a part of the body, or principal, of the trust. And it was her duty to make satisfactory accounts. In a proper action the burden fell upon her, or in the case at bar upon her administratrix, to account for her trusteeship. And if she failed to do so she cannot be heard to complain if the court accepts the best evidence available. Meier v. Johannsen, 242 Iowa 665, 47 N.W.2d 793.

It is true that after the death of Alice Long her administratrix made a detailed report of receipts and expenditures so far as she was able to ascertain them. But she had no real knowledge and no certain way of ascertaining how much of the receipts rep-

resented corpus and how much income; nor whether the disbursements were chargeable against principal or income. Henry Moeller, a certified public accountant, testified for plaintiffs that from his examination of the books and accounts, principally the bank records, he found that all of the $12,000 which was loaned to S. H. Rudolph came from the principal of the trust. It was the best evidence available, in view of the failure of Alice Long to separate the principal and income and to keep any record of her doings. It is also an important circumstance here that upon the death of Alice Long there remained in the Ed Long estate substantially nothing except the "home farm" of 240 acres. The entire personalty had in some manner been dissipated. It is a fair conclusion that $12,000 thereof was invested in the Rudolph loans, and now appears as the real estate involved in this action. The facts here are much like those in Baldwin v. Morford, 117 Iowa 72, 90 N.W. 487, and the court there held that the life tenant had used money from the corpus of the estate to purchase the real estate involved in the litigation.

We think the whole record abundantly shows that the trial court was correct in holding that the money invested in the Rudolph mortgage came from the principal of the Ed Long estate, and that when the mortgage was transferred into title to the 160 acres of land involved herein such land remained a part of the body of the estate.

II. We are of the opinion, however, that the plaintiffs were entitled to relief in this action, instead of being forced into an accounting in probate. Defendants made no motion to transfer to probate. We had before us a similar situation in the recent case of In re Estate of Wissink, 242 Iowa 441, 445, 46 N.W.2d 717, 720. There complaint was made that the matter should have been brought in equity instead of probate. This court, again speaking through Justice Smith, said:

"The bringing of the proceeding in probate instead of equity is at most a procedural irregularity, remediable by transfer to the proper side, not by dismissal. It does not involve a jurisdictional question. As stated in 34 Iowa Law Review 116, 117, the separation of the civil powers of the district court into law, equity and probate is merely one of docket, not jurisdiction."

We have so held in In re Guardianship of Kappel, 242 Iowa 1021, 47 N.W.2d 825; Cleghorn v. Benjamin, 239 Iowa 455, 459, 31 N.W.2d 887; In re Guardianship of Damon, 238 Iowa 570, 573, 28 N.W.2d 48; In re Estate of Anders, 238 Iowa 344, 350, 351, 26 N.W.2d 67; and Jennings v. Schmitz, 237 Iowa 580, 585, 20 N.W. 2d 897.

We have said in Division I that the case of Baldwin v. Morford, cited therein, much resembles the one at bar. There the life tenant invested $500 of the principal of the estate in a dwelling house which she placed in the name of a third party. The action was for the purpose of setting aside the deed. The relief asked was granted by the trial court and its action affirmed by this court.

 In re Estate of Wissink, supra, seems a complete answer to the contention that plaintiffs' relief should have been sought in probate. However, as bearing somewhat upon the question, we have held that when property of an estate consisting of a note and mortgage is changed, by foreclosure, to title to the real estate which secured the mortgage, it is still personalty. Langfitt v. Langfitt, 223 Iowa 702, 273 N.W. 93, 110 A. L. R. 1390. We have also announced the seemingly elementary proposition that the rights of the life tenant are not enlarged by a change in the form of the property of the estate. Olson v. Weber, 194 Iowa 512, 514, 187 N.W. 465, 27 A. L. R. 1370.

 In Carpenter v. Lothringer, 224 Iowa 439, 275 N.W. 98, it was decided that a controversy over the ownership of property devised or bequeathed in a will is properly determinable in equity, and that equity might impress a trust for the purpose of enforcing the rights of the interested parties.

Defendants cite only two cases: Heintz v. Parsons, supra, and In re Estate of Thompson, 234 Iowa 412, 12 N.W.2d 818. Neither aids their cause. In Heintz v. Parsons the estate had been closed, and the proceeding was in equity for an accounting and in probate to reopen the estate. We held that the equity proceeding was proper, but that the estate should not be reopened, because of laches, the statute of limitations, and other reasons. In re Estate of Thompson concerned an application for authority to mortgage real estate, and a further contest over the rentals from farm property during the year of, but after, the death of the tes-

tator. Neither case has any real bearing upon the issues involved here. At least in the absence of a motion to transfer, the cause was properly cognizable in equity.

III. Defendants in their answer plead that plaintiffs' petition shows a misjoinder of parties and of causes of action. The administrators c.t.a. of the Ed Long estate were the essential parties. Not only was the farm for which recovery was sought in their action in the nature of personalty, as has been pointed out; but even if it had been realty in substance as well as in form, the administrators would have been bound to reclaim it for the estate for the purpose of paying debts or claims, costs of administration or other charges. The remaindermen had the same interest, and asked the same relief. Rule 23, R. C. P., says:

"Multiple plaintiffs. Any number of persons who claim any relief, jointly, severally or alternatively, arising out of or respecting the same transaction, occurrence or series of transactions or occurrences, may join as plaintiffs in a single action, when it presents or involves any question of law or fact common to all of them. They may join any causes of action, legal or equitable, independent or alternative, held by any one or more of them which arise out of such transaction, occurrence or series, and which present or involve any common question of law or fact."

This clearly permits the joinder of parties plaintiff and of the cause of action asserted. Rule 24 following is equally clear as to the joinder of parties defendant. There is no merit in defendants' contention here.

IV. Plaintiffs' petition contains, as a part of its prayer, a request that defendants be required to account for the rents and profits of the 160 acres of farm land involved, after the death of the life tenant. We are not told who has collected them during the long period from the commencement of this suit, May 21, 1941, to its trial and final determination by the district court on April 19, 1950; nor are we given the reason for the delay. We have indicated above our conclusion that plaintiffs are entitled to a decree in the district court quieting title in the administrators of the estate of Ed Long. As to the accounting for the rents and profits, the cause must be remanded for further proceedings in

harmony with this opinion. Costs are taxed to defendants.—Reversed and remanded.

All JUSTICES concur.