In the Matter of the ESTATE of Virgene Mae YOUNG, Deceased.

Jerry YOUNG, Appellant,

v.

Martha YOUNG and Dick Young, Appellees.

No. 61583.

Supreme Court of Iowa.

Dec. 20, 1978.

Laird, Burington, Bovard, Heiny & McManigal by Don W. Burington and Gerald M. Stambaugh, Mason City, for appellant.

Wood & Morrison, Webster City, for appellees.

Considered by REES, P. J., and UHLENHOPP, HARRIS, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal involves the authority of a probate court to establish a trust to administer wrongful death damages.

Jerry Young and his wife Virgene Mae Young, deaf mutes, had two children, Martha and Dick. Jerry sustained severe personal injuries and Virgene was killed in an automobile accident on March 10, 1975. At that time § 633.336 of the Iowa Probate Code provided:

When a wrongful act produces death, damages recovered therefor shall be dis-

posed of as personal property belonging to the estate of the deceased, but if the deceased leaves a spouse, child, or parent, it shall not be liable for the payment of debts of the estate, except debts and charges of the first, second, third and fifth classes.

This statute governs distribution of damages recoverable for Virgene's wrongful death. *In re Estate of Parsons*, 272 N.W.2d 16 (Iowa).

The administrator of Virgene's estate pressed a tort claim against a third person for Virgene's death. Eventually the third person offered $100,000 in settlement. The administrator reported the offer to the probate court with the recommendation that it be accepted, and suggested that each child receive $25,000 and Jerry receive the balance. The administrator prayed that "the foregoing settlement be approved and the Court adjudicate the amounts that should be paid to the children and the surviving spouse of the decedent," and that he be authorized to execute the necessary documents.

Jerry resisted the application. The probate court held a hearing on notice and on January 14, 1977, the probate judge filed an order approving the settlement for $100,000 and stating that "the matter of division of proceeds is submitted to the Court for further ruling."

On April 25, 1977, the probate judge filed an order establishing a trust consisting of the settlement proceeds "for the purpose of providing for the support, education and common welfare of the three beneficiaries." The order further stated, "Such of the income as needed shall be applied or distributed by said trustees, in cash or in kind, for the support, education and general welfare of each beneficiary. Such distributions shall be made to those persons and in manner and amounts as the trustees may jointly agree fulfill the purposes of this trust." As to the corpus the order stated, "[A]ll distributions of the corpus of the trust shall be subject to application and order of this Court." The order also named Jerry's sister and a bank as co-trustees, contained a spendthrift clause, provided for investments by the trustees, a fidelity bond, annual reports, and court costs, and retained jurisdiction to modify or terminate the trust.

Counsel for the respective parties did not receive a copy of the April 25th order at the time. On July 21, 1977, Jerry's attorney wrote the administrator's attorney as follows:

I assume that you know nothing more than I do about when the Judge might rule on the matter we submitted many months ago. I am afraid it would be in poor taste if we asked the Judge when we might expect a ruling but I believe it would be in line for you to tell the Judge that you and I have corresponded in connection with this matter and that if he would like to have this matter argued orally again, we both would be pleased to do so. I suppose there is no question but what he would say that isn't necessary but it appears to me that it might well be a polite approach to urge him to get out the ruling as soon as he reasonably can.

Apparently nothing came of this suggestion.

On November 8, 1977, the clerk of probate court mailed copies of the April 25th order to counsel. Jerry's attorney received his copy on November 9, 1977, and two days later asked the clerk why the order had not been mailed when filed. On November 23, 1977, the clerk responded, "The copies were inadvertently placed in the back of the file by office personnel and were mailed upon discovery." On December 6, 1977, the parties involved stipulated that copies of the order were not mailed to counsel for any of the parties until November 8, 1977.

On November 17, 1977, Jerry filed a petition to modify the April 25th order, relying on "Rules 252 and 253" of the Rules of Civil Procedure and also on "the inherent power of the Court." Jerry asked that the order be modified by eliminating the trust—which would be tantamount to setting aside the order. As support for the petition he alleged, inter alia, "Mistake, neglect or omission of the clerk" under rule 252(a), R.C.P. He alleged the matters he asserts

on the merits in this appeal as his meritorious claim. See rule 253(a).

On January 6, 1978, after a hearing on the petition, the probate court filed an order upholding the trust upon the merits and stating that the trust "provides the best vehicle by which the diverse and dynamic interests of the beneficiaries may be served. . . ." The court implicitly sustained Jerry's procedural grounds of mistake, neglect, or omission of the clerk, since it reached the merits. A limited remand for an entry by the probate court on the procedural ground of mistake would be an unnecessary formality, especially since the parties stipulated the clerk's inadvertence. In reality the probate court reopened the April 25th order on Jerry's petition alleging mistake by the clerk and after reconsideration of the merits rendered a second decision establishing the trust.

Jerry appealed to this court on January 31, 1978. He asserts here a number of reasons for our nullifying the establishment of the trust. His first reason, relating to the authority of the probate court to establish a trust, is determinative.

■ I. *Motion to Dismiss.* At the outset the children's guardian ad litem moves to dismiss the appeal on the ground that Jerry did not appeal within 30 days of the final order entered on April 25, 1977, as required by rule 5(a), Rules of Appellate Procedure. See *Matter of the Estate of Myers*, 269 N.W.2d 127 (Iowa). The April 25th order was a "final judgment" for appeal purposes under rule 5(a) by virtue of § 633.36 of the Probate Code. If Jerry had merely served notice of appeal when his attorney received the copy of the April 25th order in November 1977, his attempted appeal would have been too late. This follows from rule 82(f) of the Rules of Civil Procedure ("Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed [with an exception not applicable here]"), and § 633.34 of the Iowa Probate Code ("All actions triable in probate shall be governed by the Rules of Civil Proce-

dure, except as provided otherwise in this Code."). We deem this contest between the parties over the establishment of a trust to be a species of "action" within § 633.34; hence the Rules of Civil Procedure apply.

Jerry did not however merely appeal from the April 25th order. Instead, he sought to nullify that order by petition under rules 252 and 253. The latter rule required him to allege (1) his ground that the order should be set aside (he did so by alleging the clerk's mistake), and (2) his ground that the order is wrong on the merits (he did so by alleging inter alia that a probate court does not have authority to establish a trust). After a hearing on the petition the probate court ruled against Jerry on the merits, upholding its power to establish a trust. The court thereby reconsidered the prior order and affirmed its position establishing a trust. Under § 633.-34 of the Code, the probate court could reopen the prior order pursuant to civil rules 252 and 253. See also 46 Am.Jur.2d Judgments § 681 at 831 ("In a proper case, a judgment of a surrogate, ordinary, or probate court may, like all other judgments, be attacked by a direct proceeding in the court where it was rendered, and set aside or corrected."); 21 C.J.S. Courts § 309c at 559–560 ("A court of probate may, like other courts, amend or correct, or open or vacate, its judgments or orders.").

Jerry appealed within 30 days of the January 6th order. In view of the proceedings in the probate court under rules 252 and 253, the appeal is timely. We therefore overrule the motion to dismiss and proceed to the merits.

■ II. *Waiver of Objection to Proceeding in Probate.* A preliminary question on the merits is whether Jerry waived objection to proceeding in probate.

Two principles come into play. One principle deals with the organization of the Iowa District Court. That court has separate dockets for civil, criminal, juvenile, probate, small claims, and simple misdemeanor cases. When a case is proceeding under one of these dockets, the authority of the court

over the case may be different than under another docket. This court stated in *Coulter v. Petersen*, 218 Iowa 512, 513, 255 N.W. 684, 685, "That the jurisdiction of the probate court is separate and distinct from its ordinary law and equity jurisdiction, see *Mollring v. Mollring*, 184 Iowa 464, 167 N.W. 524. . . . To put it in another way, if a will were tendered in an equity court asking that the court admit the same to probate, the court would be without jurisdiction to make such order because the power to probate a will, under our procedure, lies exclusively with the probate court." More recently we repeated this principle in *Davis v. Travelers Ins. Co.*, 196 N.W.2d 526, 528–529 (Iowa): "The jurisdiction of the probate court is separate and distinct from the ordinary law and equity jurisdiction of the district court."

The other principle deals with cases filed in the "wrong" docket. Since Iowa has only one court of original jurisdiction, § 602.1, if a case is proceeding under the wrong docket one or both of the parties must move that it be transferred to the proper docket, or the court must transfer it, otherwise the case may proceed to conclusion where it is. This court stated in the case of *In re Estate of Lenders*, 247 Iowa 1205, 1210, 78 N.W.2d 536, 539:

Appellees-executrices argue the remedy for breach of an agreement to make mutual wills is an action for damages for breach of contract or for specific performance and the probate court lacks jurisdiction to grant the relief prayed for by appellants-objectors. It is doubtless true appellants might have sued for breach of contract or for specific performance. *In re Estate of Farley*, 237 Iowa 1069, 1078, 24 N.W.2d 453, 457–458; annotation 169 A.L.R. 9, 53; 57 Am.Jur., Wills, section 715; 68 C.J., Wills, § 207; 94 C.J.S., Wills, § 122.

If we assume, without so deciding, objectors were in error as to the kind of proceeding adopted this is not ground for dismissal of their objections, but merely for transfer to the proper docket. Since the executrices made no motion to transfer the proceeding from the probate docket any error as to the form of action adopted was waived. Sections 611.7, 611.9, 611.12, Code 1954, I.C.A.

We have repeatedly pointed out the district court in this state is only one court. Before it all proceedings come, whether law, equity or probate. If no motion is made to transfer to another docket the district court, sitting in probate, may hear and determine litigation which could or should have been brought at law or in equity. The point the executrices now raise relates at most to a mere procedural irregularity which they waived, and does not go to the court's jurisdiction.

Similar pronouncements were made in the cases of *In re Estate of Allen*, 247 Iowa 618, 75 N.W.2d 241, and *Williams v. Morrison*, 242 Iowa 1054, 48 N.W.2d 666.

The present administrator filed his application in the probate court to approve the settlement. He asked authority to accept the proposed settlement and execute the necessary papers—a matter within the province of probate courts. § 633.114. We have read the transcript of the hearing in probate on the application. With one exception the issues raised by the parties in their opening statements, evidence, and summations were (1) whether the settlement should be approved (on which they seemed to agree), and (2) how the settlement money should be divided between Jerry as surviving spouse and Martha and Dick as children (on which they disagreed). The parties did not deal with a trust. Nor did the summations mention a trust until the end of the final summation, which was by the administrator's attorney. That attorney stated in concluding, "I think the problem might be solved [dividing the money between Jerry and the children] by the Court putting this money in a trust having the income from it divided three ways to help us with our I.R.S. problems and give the trustee discretion as these kids reach eighteen or as Jerry's problems increase." He added at the end that "if such a trust as I just thought of here might be of some assistance maybe that would be one way to

go here," and stated, "I am sure the Court has the discretion to set up such a trust and it might be the way to go." The court took the application under submission. In its order approving the settlement, entered January 14, 1977, the court did not mention a trust but stated that the "division of proceeds" was submitted for further ruling. After further consideration the court established the trust in its order of April 25.

Under these circumstances we are not willing to penalize Jerry for failing to move to transfer the case to the equity docket. If the parties had proceeded at the hearing with a trial on the question of whether a trust should be established to administer the settlement fund, then the rule of the Lenders line of cases would apply. Here however the pleadings—the administrator's application and the resistance—gave no indication that a question of the establishment of a trust would be litigated at the hearing. At the hearing such a question was not tried. We conclude that the principle of the Coulter-type cases applies and that the authority of the court must be tested under the rules which are applicable to probate courts.

 III. *Authority of Probate Court.* We prefer to dispose of the case on the issue of the authority of probate courts to establish trusts, rather than on the basis of the limited prayer of the administrator's application or on the ground of retention of jurisdiction in the court's order establishing the trust. Moreover, we have no occasion to decide whether an equity court would establish a trust here. We thus proceed to the law on the authority of probate courts to establish trusts.

Trusts are traditionally creatures of equity. Restatement, Trusts 2d Introductory Note at 1; 76 Am.Jur.2d Trusts § 3 at 248–249 ("trusts have by reason of their historical development become an integral part of equitable jurisprudence"); 89 C.J.S. Trusts § 8 at 719 ("a trust is regarded as a creature of equity"). They are of four main varieties: express (intentionally created, inter vivos or at death), resulting (as where A pays for property but takes title in

B's name), constructive (as where by wrongful act A acquires property which in good conscience should be transferred to B), and charitable (property held for a charitable use). Restatement, supra, §§ 1, 2; Restatement, Restitution, § 160.

In line with these principles, equity courts have jurisdiction to establish trusts and, absent statute, probate courts do not. As stated in 90 C.J.S. Trusts § 454b(1) at 871:

A court of equity has jurisdiction of all questions relative to the establishment, enforcement, and protection and preservation of all trusts.

And in § 454(c) at 879:

As a general rule, probate, surrogate's, or orphans' courts have no jurisdiction to establish and enforce a trust in an estate subject to their jurisdiction, except to the extent that such jurisdiction is conferred on them by valid statutory provisions.

We turn to the Iowa statutes. Section 633.3(34) of the Iowa Probate Code defines trusts for probate purposes as follows:

*Trusts—include only:* testamentary trusts; express trusts where jurisdiction is specifically conferred on the court by the trust instrument; express trusts where the jurisdiction of the court is invoked by the trustee, beneficiary or any interested party for a limited purpose, or otherwise; and trusts which are established by a judgment or a decree of court which results in administration of the trust by the court, and the court entering the judgment or decree establishing such trust orders the administration of the trust transferred to the probate court.

Section 633.10, which sets out the jurisdiction of the probate court, is divided into four parts: (1) estates of decedents and absentees, (2) construction of wills and trust instruments, (3) conservatorships and guardianships, and (4) trusts and trustees. Part 4 provides that the probate court shall have jurisdiction of:

The appointment of trustees; the granting of letters of trusteeship; the administration of testamentary trusts; the administration of express trusts

394

where jurisdiction is specifically conferred on the court by the trust instrument; the administration of express trusts where the administration of the court is invoked by the trustee, beneficiary or any interested party; the administration of trusts which are established by a decree of court and result in the administration thereof by the court; and the settlement and closing of all such trusts. § 633.10(4).

Section 633.10(4) does not encompass the present case for two reasons. First, this case involves the *creation* of a trust, which § 633.10(4) does not cover. Creation is left to settlors or testators or to courts of equity as before. Second, § 633.10(4) speaks in terms of "trusts" but § 633.3(34) limits trusts to testamentary trusts, express trusts, and trusts established by decree of court where the court establishing the trust orders the administration of the trust "transferred" to the probate court. None of these is present here.

We conclude that the probate court lacked authority to establish a trust.

IV. *Disposition.* No one attacks the settlement of the death claim as improvident, and the court's approval of it may stand.

 As to distribution of the settlement proceeds, the probate court and the parties did not at the time have our decision in the case of *In re Estate of Parsons*, 272 N.W.2d 16 (Iowa). Under *Parsons* the shares of Jerry and of the children are to be ascertained under § 633.336 and §§ 633.211 et seq. of the Iowa Code of 1973.

 As to administration of the funds, we see no need for departing from usual probate procedure respecting the shares of Jerry and the children. A petition for appointment of a conservator of the property of the minor children may be filed under § 633.566(2); that conservator will receive the children's shares. A petition may also be filed under § 633.566(2) for appointment of a conservator of Jerry's property, and if a petition is so filed a hearing is to be conducted on the issue of whether Jerry "is incapable of managing his property." Failing the establishment of a conservatorship of Jerry's property, Jerry himself is of course entitled to receive his share.

We return the case to the probate court for an order of distribution under *Parsons*, for a conservatorship of the children's property, and for such conservatorship proceedings regarding Jerry's property as may be instituted within 60 days of procedendo. If conservatorship proceedings regarding Jerry's property are not so instituted or if they are so instituted but the grounds therefor are not established, Jerry is entitled to receive his share directly.

REVERSED AND REMANDED.